## Commonwealth v. Pennsylvania Railroad Co.

*Edward Friedman* and *Howard L. Criden,* Deputy Attorneys General, *Herbert B. Cohen,* Attorney General, and *David C. Wolfe,* District Attorney, for Commonwealth.

*Oliver, Brandon & Shearer,* for intervenors.

*William J. Taylor* and *Englehart, Larimer & Englehart,* for defendant.

GRIFFITH, J., July 14, 1956.— Nine criminal informations were made before a justice of the peace in Cambria County charging defendant with the violation of section 3 of the Full Crew Law of June 1, 1937, P. L. 1120, 67 PS §461c. On June 1, 1956, the same date the informations were filed, service of the informations and warrants was accepted by counsel for defendant railroad "without any prejudice . . .

to question the validity of the proceedings at any time". No officer of defendant railroad was placed under arrest nor was defendant required to give bond for hearing. On June 5, 1956, defendant filed its petition and obtained a rule to show cause why the informations and warrants of arrest should not be quashed, defendant discharged and all proceedings to stay meanwhile.

On June 27, 1956, the matter came on for hearing, the record of the proceedings before the justice of the peace was introduced in evidence, oral argument was heard and briefs were later filed. The individual prosecutors and the Brotherhood of Railroad Trainmen intervened. At the hearing the Commonwealth withdrew seven of the nine informations against defendant. The informations withdrawn were those which charged the violation of section 4 of the Act of 1937, concerning the operation of freight trains consisting of 50 cars or more. We have before us, therefore, two informations in each of which it is charged that defendant operated a freight train consisting of 43 cars with less than the full crew required by section 3 of the Act of 1937 applicable to trains of less than 50 cars.

Defendant contends that the allegations contained in the informations made before the justice of the peace do not constitute a criminal offense and that they should therefore be quashed and defendant discharged.

Section 3 of the Act of 1937 provides as follows:

"Section 3. It shall be unlawful for any carrier to operate or permit to be operated in the State of Pennsylvania any freight train consisting of less than fifty cars without a full crew of competent employes. which crew shall consist of not less than one engineer, one fireman, one conductor, and two brakemen."

Section 11 of the Act of 1937 provides as follows:

"Section 11. Any railroad company, its officers or agents, officers of the court, receiver, or any person or persons operating a railroad violating any of the provisions of this act, shall be guilty of a misdemeanor, and liable to a penalty of one hundred dollars ($100) for each and every such violation, to be recovered with costs as debts are now by law recoverable by a suit in the name of the Commonwealth, for the use of the county in which such violation takes place."

Section 11 of the Act of 1937 is an identical re-enactment of section 8 of the Full Crew Act of June 19, 1911, P. L. 1053. Since the same language was used in the Act of 1937, the construction the Supreme Court placed on section 8 of the Act of 1911 before the enactment of the Act of 1937 is pertinent here.

In Pennsylvania Railroad Company v. Ewing, 241 Pa. 581, 586-587, the court construed section 8 of the Act of 1911 as follows:

"While courts of equity deal only with civil and property rights, and are without jurisdiction to interfere by injunction with the administration of criminal justice, this rule is without application in the present case. True, by Section 8 of the Act of 1911, it is declared that a violation of its provisions shall be a 'misdemeanor', but that word is the veriest surplusage, as clearly appears from what immediately follows. A misdemeanor is punishable by indictment resulting from a criminal prosecution, no such prosecution is contemplated by the Act of 1911. On the contrary, no criminal prosecution can be instituted for a violation of its provisions, for the express remedy for each violation is the imposition of a penalty of $100, 'to be recovered with costs as debts are now by law recoverable, by a suit in the name of the Commonwealth, for the use of the county in which such violation takes place'. The proceedings which the Act of 1911 authorizes to be instituted for violating it

are in the civil courts alone, where the violators are to be made defendants in *actions of assumpsit*. No criminal prosecution can be instituted against them, even though, by a legislative lapsus linguae, each violation of the act is declared to be a misdemeanor, for no fine or imprisonment is contemplated by the act, but the mere payment of a certain sum, recoverable as debts are now by law recoverable. Instead of being a penal law, the eighth section of the Act of 1911 is but a remedial one: Taylor v. United States, 3 Howard 197." (Italics supplied.)

It appears, therefore, that the Supreme Court, in considering the identical language used in section 11 of the Act of 1937 under which this defendant is now being prosecuted, found that no criminal prosecution could be instituted, that the section was not penal but remedial and that proceedings may be instituted in the civil courts alone by actions of assumpsit. The Commonwealth argues that this unequivocal expression of the Supreme Court is mere dictum. With this contention we do not agree. It is true that the question of whether the court below had equitable jurisdiction or lacked such jurisdiction because it was considering a criminal statute was not raised when the appeal in the Ewing case was first argued before the Supreme Court. However, on page 586, the Supreme Court said:

"We, nevertheless, ordered a reargument of our own motion on the single question of equitable jurisdiction, because the injunction prayed for was apparently to enjoin criminal prosecutions for violations of the Act of 1911, the provisions of which the state railroad commission are expressly required to enforce."

After deciding that the statute was not a criminal one and using the language above quoted, the court said, page 587: "On the grounds of complaint, as set

forth in the bill, the court below clearly had jurisdiction of it." Thus, in order to determine that the court had jurisdiction of the bill, it was necessary to find that the statute was not a criminal one. Therefore, we are not free to examine the Commonwealth's contention that it may institute a criminal prosecution but are bound to conclude that section 11 of the Act of 1937 which uses language identical to section 8 of the Act of 1911, does not set forth a criminal offense.

Immediately upon enactment of the Act of 1937, the Pennsylvania Railroad Company and other railroads operating in the Pennsylvania field filed a bill in equity in the Court of Common Pleas of Dauphin County and obtained a decree dated April 26, 1939, enjoining the Attorney General and the Public Utility Commission from enforcing the Full Crew Act of 1937. A bill of review was filed by the Attorney General in 1955 as a result of which a decree was entered January 4, 1956, discharging the bill but "without prejudice to the right of the Attorney General to proceed through the Public Utility Commission for the enforcement of Sectons 3, 9 and 10 of the Act of June 1, 1937, P. L. 1120, nor to the right of the plaintiff to plead in said proceedings any and all defenses which it may desire to present": Pennsylvania Railroad Co. v. Schwartz, 383 Pa. 575, 577. The present proceedings are not within the limits of the Supreme Court's decree of January 4, 1956. They are not proceedings by "the Attorney General through the Public Utility Commission" but are criminal informations made by individual employes of defendant railroad.

However, in spite of our view as to the controlling effect of Pennsylvania Railroad Company v. Ewing, 241 Pa. 581, we are nevertheless of the opinion that defendant's motion is premature.

In certain cases the courts have used language similar to that used in Commonwealth v. Fedulla, 89 Pa. Superior Ct. 244, 246, where the court said, "there was ample time, before indictment found, for the defendant to challenge the legality of his arrest and being held for trial to answer the charge by a proceeding to be discharged from custody, or to be released from his recognizance and discharged without day."

However, no case has been cited to us wherein a proceeding by a defendant in a criminal case to be discharged was successful before indictment found except where defendant was in custody in which case, of course, the question of the illegality of the magistrate's proceedings could be raised by habeas corpus. Defendant has quoted from some of the text books to the effect that a motion may be made to quash an information on the ground that the facts contained therein do not constitute a criminal offense. These quotations are based upon a system of criminal procedure which differs from the procedure in this Commonwealth. In many jurisdictions, only felonies or infamous crimes need be prosecuted by indictment: 27 Am. Jur. 590, etc. Misdemeanors and even certain felonies may be proceeded with solely on informations. In such jurisdictions the motion to quash may be directed against the information even though defendant be free on bail: 27 Am. Jur. 697. It must be recognized, however, that in these jurisdictions the information is the Commonwealth's final pleading as no indictment is required. Under our procedure in misdemeanors or felonies the information is not Commonwealth's final pleading, but a bill of indictment must be found by a grand jury before a defendant may be forced to trial.

Defendant is concerned about delaying its motions to quash until after indictments are found, fearing that such delay might be deemed to be a waiver of

its rights. In certain cases such as Commonwealth v. Murawski, 101 Pa. Superior Ct. 430, 431, the court said that after an indictment is found it is "then too late to question the sufficiency or regularity of proceedings prior to the indictment". It is not, however, too late to question the sufficiency of the indictment. Where the courts have said that it is too late after the finding of an indictment to question the sufficiency or the regularity of the proceedings *before* the indictment there is no implication that defendant's failure to take earlier action might be deemed to be a waiver of its right to move to quash an insufficient indictment. If the indictments are drawn in accordance with the informations made in this case they will not, in our opinion, charge a criminal offense and will be subject to motions to quash as soon as found by the grand jury. While irregularities in the proceedings before the magistrate may be waived, the failure of an indictment to charge a crime may be taken advantage of by defendant at any time.[1]

---

[1] "Though formalities ordained for the ease or protection of the litigant may be waived, what is of the essence of a valid judgment cannot be. There can be no waiver, for example, if the declaration in a civil suit embodies no cause of action, or the indictment in a criminal one charges no offense. Even where a statute in terms requires the objection to the allegations to be made, if at all, at an early stage of the cause, a conviction on an indictment thus defective cannot be sustained": Bishop New Criminal Procedure (2d ed.) vol. 1, pg. 92, §123.3.

". . . it is duly specific in the motion to quash to say that the indictment charges no offense": Id. pg. 604, §772.

". . . if from the fact stated, it appear, that no indictable offence has been committed, the indictment will be thus set aside in the first instance": 1 Chitty's Criminal Law, 302.

"For certain grounds, however, a motion to quash may be entertained at any time before verdict, as where a lack of jurisdiction is apparent, or grounds are urged which would be sufficient in arrest of judgment, such as that the indictment does not charge facts to constitute a crime": 42 C. J. S. 1169.

Defendant suggests that although it would have waived its right to question the validity of the arrest, the information and warrants if it had appeared and posted bond, that by reason of not having posted bond it may now attack these proceedings at this stage. As we view it, the crucial question is not whether defendant has posted bond but whether defendant is in custody. Here defendant appeared voluntarily and accepted service. There is less reason to discharge a defendant at this stage of the proceedings by reason of the insufficiency of the information where he has appeared voluntarily and has been released without bail being required than when he has been arrested and has given bail: Commonwealth v. Ventura, 177 Pa. Superior Ct. 174, 177, citing Commonwealth v. Poley, 173 Pa. Superior Ct. 331.

In Commonwealth v. Weinstein, 177 Pa. Superior Ct. 1, the court reviewed many of the cases which considered the question of whether a defendant in a criminal case could question the legality of the proceedings before the magistrate before an indictment was found. The court said that language could be found to support both the affirmative and the negative of this question, but that it was now clear that "the illegality of the proceedings before a magistrate may not be questioned on a petition to discharge the defendant from his recognizance". There defendant was accused of selling paregoric without a prescription which is not a crime and defendant moved for release from his recognizance and to be discharged without day. The order discharging him was reversed by the Superior Court.

The court said, pages 5 and 6: "With the rights of the accused thus safeguarded, the inconvenience of *continuing* bail, once entered, is not serious when weighed against the procedural difficulties and delays created by permitting a court of quarter sessions to

review the evidence presented before the magistrate." In this case defendant was not placed in custody and no bail was required. Certainly his "inconvenience" is not greater than that of defendant in the Weinstein case.

The preferable rule seems to be that generally the courts of quarter sessions should not intervene in preliminary proceedings before a justice of the peace at the instance of a defendant charged with an indictable offense unless defendant is in custody, in which case a writ of habeas corpus will lie to test the sufficiency of the magistrate's proceedings: Commonwealth v. Weinstein, supra; Commonwealth v. Nelson, 79 D. & C. 65; Commonwealth v. National Gypsum Co., 4 D. & C. 2d 169. See also Commonwealth ex rel. v. Betoff, 89 D. & C. 9. It is true that courts of quarter sessions may entertain proceedings to quash a magistrate's search warrant and determine the legality of the seizure of gambling devices, but such proceedings are separate and final actions in rem and are not dependent upon the conviction of the owner on the indictable offense of gambling: Schuettler v. Maurer, 159 Pa. Superior Ct. 110; Commonwealth v. Bruno, 176 Pa. Superior Ct. 115; Commonwealth v. Blythe, 178 Pa. Superior Ct. 575. Of course, in offenses which are triable without indictment such as summary convictions under The Vehicle Code which are determined finally by a magistrate, the courts, on review, may inquire into the sufficiency of the magistrate's proceedings.

To permit the courts of quarter sessions to examine into the sufficiency of proceedings for indictable offenses before a justice of the peace prior to their return to the court would be the equivalent of allowing the courts of common pleas to hear preliminary objections to actions in assumpsit, not on appeal, but while the same are still pending before and undis-

posed of by the magistrate. At the present stage of these proceedings, the Commonwealth has not yet completed its pleadings. The justice of the peace may not find probable cause. If he does, and makes a return to court, the grand jury may conclude that the Commonwealth has failed to make out a prima facie case and ignore the bills. If true bills are returned by the grand jury, defendant will then have ample opportunity to move to quash the indictments on the ground that they fail to charge a criminal offense.

We, therefore, enter the following

### Decree

And now, July 14, 1956, after argument and upon due consideration, defendant's rule to show cause why the informations and warrants of arrest issued against it should not be quashed and defendant discharged is hereby discharged and the stay of proceedings heretofore granted is hereby vacated.