Scudder *v.* Smith et al., Appellants.

Heinel Motors, Inc., *v.* Roberts et al., Appellants.

Argued May 24, 1938. Before MAXEY, DREW, LINN, STERN and BARNES, JJ.

*W. W. Litke,* with him *Guy K. Bard,* Attorney General, *John P. Wanner,* Deputy Attorney General, and *John H. Fertig,* for appellants.

*Wm. A. Schnader,* with him *Joseph S. Lord, III,* for appellee No. 2.

*John Y. Scott,* with him *Walter Biddle Saul,* of *Saul, Ewing, Remick & Saul,* for appellee No. 1.

OPINION BY MR. JUSTICE MAXEY, June 30, 1938:

Two taxpayers bills were filed in the Dauphin County Court on February 25, 1938, and on March 4, 1938, respectively, against Ralph H. Smith, E. J. Thompson, Michael C. Chervenck, Jr., John E. McCone and William H. Godfrey, who were appointed to act as a commission to investigate the lubricating oil and gasoline business of the Commonwealth of Pennsylvania, and against the Auditor General and the State Treasurer of the Commonwealth. The complaint was directed against a joint resolution approved April 29, 1937, P. L. 540,

which purported to create a commission to investigate the oil industry in Pennsylvania, and against an amending act, called No. 545, approved July 2, 1937, P. L. 2704. The prayer of both bills was for a decree: (a) restraining the defendants purporting to act as a commission under this legislation from contracting or attempting to contract any debts on the part of the Commonwealth; (b) restraining the defendants, the Auditor General and the State Treasurer, from approving for payment any bills, and from paying out of the treasury of the Commonwealth any sums purported to be appropriated by this joint resolution and the amending act; and (c) restraining the defendants purporting to act as a commission from taking any proceedings whatsoever pursuant to the authority conferred upon them by the said joint resolution and the amending act.

An answer was filed by the defendants, constituting the Commission, to both bills. No formal answer was filed by the Auditor General and the State Treasurer. The answers filed to the bills practically admit the facts but deny the plaintiff's legal conclusion.

The facts set forth in the bills are as follows: The legislature of Pennsylvania, in its regular session in 1937 approved, what it designated, "A Joint Resolution," which purported to create a commission to investigate the "operation of the oil industry in this Commonwealth with special reference to the adequate, efficient and mechanical supplying of lubricating oils and materials to the people of this Commonwealth; conferring upon the commission full power to issue subpœnas, requiring the commission to make a report of its findings to the Governor together with its recommendations as to such regulating legislation . . .; authorizing the commission to employ counsel and employees; and making an appropriation" of $5,000. The amending act increased the appropriation to $50,000, and provided the procedure and punishment of persons refusing to comply with the Commission's subpœna.

The Commission was to be composed of five persons, "three to be appointed by the Governor, one to be appointed by the President pro tem of the Senate, one to be appointed by the Speaker of the House of Representatives." The Chairman was to be designated by the Governor. The resolution also provided for penalties according to law for "wilful neglect or refusal to testify before the commission or to produce any books, papers, records or documents." Pursuant to the authority of the resolution, the Governor appointed, as members of the commission, the defendants, Ralph H. Smith, John E. McCone and William H. Godfrey; the President pro tem of the Senate appointed E. J. Thompson; the Speaker of the House of Representatives appointed Michael C. Chervenck, Jr. The Governor named Ralph H. Smith as Chairman of the commission. The commission so created was intended to function and did function after the adjournment of the legislature.

The gravamen of the complaint by both taxpayers is (1) that the joint resolution was legislative in character, carrying with it an appropriation of public money, and that since it was not passed by *Bill,* it violated Article III, Section 1; Article III, Section 15; and Article III, Section 16, of the Constitution of Pennsylvania; (2) that the grant of power to the commission was an improper delegation of legislative power violating Article II, Section 1 of the Constitution of Pennsylvania; and (3) that the broad inquisitorial powers of the commission violated the Bill of Rights of the Pennsylvania Constitution and the Fourteenth Amendment to the Constitution of the United States. Taxpayer Scudder's bill also charges that the membership of the investigating commission is not, by the terms of the joint resolution and amending act, limited to members of the General Assembly of this Commonwealth.

The defendants, denying the plaintiff's legal conclusions, contended that the joint resolution was a valid law and that the appropriation which it provided was a

valid and proper exercise of legislative power. They also contended that the commission was properly given the power of subpœna and the power of investigating the records of those connected with the oil industry.

The case was heard upon the pleadings, and, in the opinion filed by the court below entering a decree nisi, it ruled that the attempt to legislate and make an appropriation by a joint resolution was invalid under Article III, sections 1, 15 and 16 of the Constitution of Pennsylvania, that the power of investigation delegated to the commission constitutes an improper delegation of legislative power under Article II, section 1 of the State Constitution, and that the inquisitorial powers granted to the commission and the powers of subpœna violated the Bill of Rights of the Constitution of Pennsylvania and the 14th Amendment to the Constitution of the United States.

Exceptions were duly filed by the defendants to the decree nisi which were dismissed and a final decree entered on April 14, 1938, from which the commission has taken this appeal.

The first question posed is: What is a legislative "Joint Resolution?" Is it a "law" within the meaning of section 1 of Article III of the Constitution of Pennsylvania, or is it what the legislature itself denominated it, "A Joint Resolution," a form of legislative expression recognized in section 26 of this same Article?

The legislative measure here is designated "A Joint Resolution." Section 1 of this legislation begins, "Be it resolved, etc." The amendatory Act No. 545, enacted two months later by this same legislature, showed no intention to treat these words as carelessly chosen, because it refers to it as *the joint resolution* approved the 29th day of April, 1937, . . ." (italics supplied) and reiterates in at least three other places in this amendatory act that it is "a joint resolution." The legal phraseology designating the passage of a law by *bill* uniformly has been "Be it enacted, etc.," the same

phraseology this Assembly so deliberately used in the enactment of the amendatory Act No. 545. That this was intended to be a joint resolution by the Assembly we have no doubt. Here was an express declaration of the intent of the legislature to "resolve" and not to "enact."

Section 1 of Article III of the Constitution provides: "No law shall be passed except by Bill, and no Bill shall be so altered or amended on its passage through either House as to change its original purpose." In the *Southwark Bank v. The Commonwealth,* 26 Pa. 446, 450, this court said: "A bill is the draft or form of an act presented to the legislature, but not enacted. An 'act' is the appropriate term for it after it has been acted on by, and passed, the legislature. It is then something more than a draft or form. It has a legal existence as 'an act' of the legislative body, because it becomes a law, without further action from any other branch of the government, if the executive take no measures to prevent it." A "Bill" has been defined to be "a form or draft of a law presented to a legislature for enactment": Webster's New International Dictionary. A "Joint Resolution" has been defined by the same authority to be "A resolution adopted jointly by the two branches of a legislative body." A "resolution" by the same authority has been defined as "A formal expression of the opinion or will of an official body or a public assembly, adopted by vote; as a legislative resolution." When the Constitution provided that "no law shall be passed except by bill," it meant by "a form or draft of a law submitted to the legislature for enactment"; it did not recognize a mere "formal expression of opinion" as adequate to the *creation of a law.* The fact that the joint resolution went through the *mode of passage* prescribed by the Constitution for bills, does not supply the constitutional deficiencies of its conception. The purpose of the constitutional requirements relating to the enactment of *laws* was to put the members of the Assembly and

*others interested, on notice,* by the title of the measure submitted, so that they might vote on it with circumspection. What was attempted to be done by the sponsers of this challenged measure was something utterly alien to the proper subject matter of a "joint resolution." Its deceptive nomenclature is fatal to its validity as a *law.*

This "joint resolution" first purports to create a Commission to investigate the oil industry in Pennsylvania. It confers certain authority upon this Commission, giving it unlimited inquisitorial power by the process of subpœna *upon any person.* It subjects such person in the event of wilful neglect or refusal to testify or produce books, records, papers or documents, "to the penalties provided by the Laws of the Commonwealth in such cases." By Section 4, it contains an appropriation which is to be used to pay the Commission's expenses. The subject matter of this joint resolution is legislative in its nature. It is not a mere formal expression of legislative opinion. Fatal to the Attorney General's contention that this legislative expression is a law, is Article III, Section 1 of our Constitution, which declares that "no law shall be passed except by bill." Clearly the requirements of Section 15 of the same Article that "all appropriations must be passed by bill" cannot be construed to mean that appropriations can be passed by joint resolution as in this case. This "joint resolution" was not a bill and its adoption by the legislature and approval by the Governor did not make it a *law.* In *Ex Parte Hague,* 105 N. J. Eq. 134 (1929), 147 A. 220, 222, Vice-Chancellor FALLON said: ". . . A joint resolution adopted by a State Legislature is not a law. It is of less solemnity than a law and clearly distinguishable therefrom. . . ." To a like effect was a statement by Circuit Judge BINGHAM in *Sancho v. Valiente & Co.,* 93 Fed. (2d) 327, 329 (C. C. A. 1st): "The appellant, however, contends that the word 'bill' as used in the phrase 'No law shall be passed except by bill,' means a

proposal for a law and that a proposal for a law may be by bill or joint resolution; but we cannot accede to this view," and he also in his opinion said: ". . . but if the intention of Congress with relation to the matter is to be ascertained from the specific assertion in section 34, 48 U. S. C. A., section 824, that 'no law shall be passed except by bill' there can be little, if any, doubt that a valid law cannot be passed by a joint resolution."

Having decided that the "joint resolution" under review is not a law, it is unnecessary for us to discuss the other invalidities alleged, namely, that the joint resolution attempts to delegate legislative power to a Commission, that the joint resolution is in violation of the declaration of rights, that it authorized the taking of the property without due process of law, that the oil industry is not affected with a public interest, and that the report of the Commission is directed to be made to the Governor without any requirement in the joint resolution that it shall be made to the legislature.

The defendants' contention that the plaintiffs were guilty of laches is without merit. It is true the resolution was passed the 29th day of April, 1937, and the Amendment was approved the second day of July, 1937, but the subpœna which was attacked in this case was first issued on the third day of January, 1938, for a hearing fixed for the first day of February, 1938. This action was instituted twenty-five days later.

The appellants admit that if the joint resolution is unconstitutional, the amending Act No. 547, cannot stand by itself.

The decrees of the court below are affirmed, at the cost of the appellants.

Mr. Chief Justice KEPHART and Mr. Justice SCHAFFER took no part in the decision of this case.