Consumer Party of Pennsylvania et al., Petitioners *v.* Commonwealth of Pennsylvania et al., Respondents.

Argued December 6, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

*Richard A. Ash, Lyman & Ash,* for petitioners.

*Gregory R. Neuhauser,* Deputy Attorney General, with him, *Allen C. Warshaw,* Deputy Attorney General, Chief of Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondents, Commonwealth of Pennsylvania.

*C. Clark Hodgson, Jr.,* with him, *William G. Scarborough, Ursula B. Rartels and Jeffrey A. Lutsky, Stradley, Ronon, Stevens & Young,* for respondents, The Senate of the Commonwealth of Pennsylvania, The House of Representatives of the Commonwealth of Pennsylvania, Henry Hager, President Pro Tempore of the Senate, and K. Leroy Irvis, Speaker of the House.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., April 19, 1984:

The Consumer Party of Pennsylvania and Defendants R. Budd Dwyer, State Treasurer of the

Commonwealth, and the Commonwealth of Pennsylvania have filed cross-motions for summary judgment. Defendants, the House of Representatives and the Senate of the Commonwealth of Pennsylvania, Henry Hager, President Pro Tempore of the Senate, and K. Leroy Irvis, Speaker of the House (General Assembly) have filed various preliminary objections. At issue is the constitutionality of that part of Senate Bill 270[1] which provided for increases in pay and expenses for the members of the General Assembly. We grant the summary judgment motion of defendants Dwyer and the Commonwealth and deny the summary judgment motion of the Consumer Party. The preliminary objections of the General Assembly are sustained.

On September 30, 1983, Governor Thornburgh signed into law S.B. 270. The Consumer Party brought suit to have S.B. 270, as it pertained to pay and unvouchered expense increases for the General Assembly, declared unconstitutional. It also petitioned this Court to permanently enjoin the Common- with him, *Allen C. Warshaw,* Deputy Attorney Genwealth from paying[2] out any monies to the members of the General Assembly under the provisions of S.B. 270. The disputed portions of S.B. 270 read as follows

(a) Members salary, expense and mileage. —The salary of members of the General Assembly shall be $35,000 per annum and mileage to and from their homes at the rate of 20¢

----

[1] Public Official Compensation Law, Act of June 1, 1956, P.L. 1959, *as amended,* 65 P.S. §366.1.

[2] Since we find S.B. 270 to be constitutional, we need not consider that part of the Consumer Party's prayer for relief which would compel the Commonwealth Treasury to recoup all overpayments made to the General Assembly.

per mile, circular, for each week a member was in actual attendance in session between their homes and the State Capitol and, except as provided herein, no other compensation shall be allowed whatsoever, except each member of the General Assembly shall receive an allowance for clerical assistance and other expenses incurred during his term in connection with the duties of his office in the sum of $7,500 annually; the salary to be payable in equal monthly installments the first day of the month, including the installment due December 1 of each even-numbered year except that the salaries of Senators elected at the General Election of 1982 during the remainder of their term shall be $25,000 per annum and such members shall receive in addition to the allowance for clerical assistance and other expenses, the expense allowance of $10,000 per annum.

. . . .

Section 5. Additional expenses for members of the General Assembly.

(a) Members expense allowance.—For the period commencing December 1, 1983 and ending November 30, 1984, members of the General Assembly shall receive, in addition to any allowance for clerical assistance and other expenses, an unvouchered expense allowance of $5,000 which shall be paid monthly on the first day of the month.

The Consumer Party contends that Sections 4[3] and 5[4] of the Public Official Compensation Law vio-

---

[3] 65 P.S. §366.4.
[4] 65 P.S. §366.5

late sections, 1,[5] 3,[6] 4[7] and 27[8] of article 3 of the Pennsylvania Constitution.

We will first address the relevant preliminary objection[9] of the General Assembly to the instant ac-

[5] Section 1 provides:

§1.  Passage of bills

No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose.

Pa. Const. art. III §1.

[6] Section 3 provides:

§3.  Form of bills

No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compelling the law or a part thereof.

Pa. Const. art. III §3.

[7] Section 4 provides:

§4.  Consideration of bills

Every bill shall be considered on three different days in each House. All amendments made thereto shall be printed for the use of the members before the final vote is taken on the bill and before the final vote is taken, upon written request addressed to the presiding officer of either House by at least twenty-five per cent of the members elected to that House, any bill shall be read at length in that House. No bill shall become a law, unless on its final passage the vote is taken by yeas and nays, the names of the persons voting for and against it are entered on the journal, and a majority of the members elected to each House is recorded thereon as voting in its favor.

Pa. Const. art. III §4.

[8] Section 27 provides:

§27.  Changes in term of office salary prohibited

No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment.

Pa. Const. art. III §27.

[9] Since we find for the General Assembly and its individually-named officers on this preliminary objection, we need not address their other preliminary objections.

tion. The General Assembly argues that the Speech and Debate Clause of the Pennsylvania Constitution is an absolute bar to the Consumer Party's suit against the General Assembly. The Speech and Debate Clause states:

> The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place.

Pa. Const. art. II §15.

Our Supreme Court, in *Consumer Education and Protective Association v. Nolan,* 470 Pa. 372, 368 A. 2d 675 (1975), held that the Speech and Debate Clause protects all legislative activities which fall within the legitimate legislative sphere and is a bar to any suit brought against those actions. In *Nolan,* the Consumer Education and Protective Association sought declaratory and injunctive relief against the full Senate and individual members of the Senate for their actions in rejecting certain gubernatorial nominees.

The Supreme Court dismissed the action as to the Senate and individual Senators, stating:

> Although we have not previously had occasion to address ourselves to this constitutional provision, we observe that it is essentially identical to and obviously derived from the Speech and Debate Clause in Article I, Section 6 of the Federal Constitution, the scope of which in barring legal action against members

of Congress has been interpreted in a long line of federal cases. The Eastland v. United States Servicemen's Fund, 421 U.S. 491, 95 S. Ct. 1813, 1821, 44 L.Ed 2d 324 (1975), the Supreme Court of the United States recently held that the federal Speech and Debate Clause must be interpreted broadly in order to protect legislators from judicial interference with their legitimate legislative activities, and that even where the activity questioned is not literally speech or debate, a court must determine if it falls within the 'legitimate legislative sphere'; if it does, the action against the legislator calling it into question, whether criminal or civil, must be dismissed . . . . Since we find no basis for distinguishing the scope of the Pennsylvania Speech and Debate Clause applicable to members of the General Assembly from that of the federal clause applicable to members of Congress, and since we find that the activities of appellees Nolan and Kline complained of in the instant case were clearly within the 'legitimate legislative sphere,' we conclude that this action should have been dismissed on this ground as to them.

*Nolan* 470 Pa. at 382-83, 368 A.2d at 680-81.

We find that reasoning equally applicable here. Clearly, nothing is more within the legitimate legislative sphere than the process leading up to and the passage of legislation. We therefore dismiss the General Assembly and its named officers as parties to this suit.

Though we hold that the Speech and Debate Clause is applicable in this case, we deem it proper to address the Consumer Party's argument that to allow the clause to apply in this case would be to

contravene the intent of the Pennsylvania Constitution of 1874. The Consumer Party is historically correct in its position that a major reason for the Constitutional Convention of 1873 was a reform of legislation to eliminate the abusive practices that had crept into the legislative process: It was from that concern that article 3, section 1 was created. It is at this point that the Consumer Party's argument fails. The legislative abuses which so rightly concerned the citizens of this Commonwealth some one-hundred and ten years ago were internal abuses. It was at this time that the power of corporations, particularly the great railroads, was growing unchecked. Special interest groups with their seemingly endless supplies of money had infiltrated many sectors of the General Assembly. This scenario produced evils which were invading every phase of legislative process. Logrolling became the order of the day. Provisions were added to bills at the final instant, many times without the knowledge or consent of some members of the legislature. It was these internal legislative abuses that article 3, section 1 was intended to correct.

Our Supreme Court, in *Scudder v. Smith,* 331 Pa. 165, 170, 200 A. 601, 604 (1938), held that:

Section 1 of Article III of the Constitution provides: "No law shall be passed except by Bill, and no Bill shall be so altered or amended on its passage through either House as to change its original purpose." ... The purpose of the constitutional requirements relating to the enactment of *laws* was to put the members of the Assembly and *others interested, on notice,* by the title of the measure submitted, so that they might vote on it with circumspection. (Emphasis in original.)

The Supreme Court, in *Commonwealth v. Stofchek,* 322 Pa. 513, 517, 185 A. 840, 843 (1936), held that the various procedural safeguards of article 3 were "intended to operate to exclude from the measure that which is secret and unrelated."

The Consumer Party merely alleges that certain procedures were not strictly followed in the enactment of Sections 4 and 5 of the Public Official Compensation Law. The Consumer Party does not allege that any members were deceived as to the contents of the bill, making them unable to vote on it with circumspection. There is no submission by the Consumer party that any part of the measure was secret. It is therefore apparent that the intent of the Pennsylvania Constitution of 1874 was followed in the passage of this bill. The Consumer Party's argument that sections 1 and 4 of article 3 of the Pennsylvania Constitution were violated in the passage of this bill must therefore fail.

We now turn to the final question before us: Are Sections 4 and 5, as enacted, constitutional?

The Consumer Party argues that Sections 4 and 5 violate article 3, section 27 of the Pennsylvania Constitution, which states:

No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment.

Section 4 of the Act does not increase the salaries of any current members of the General Assembly. The salary increase does not take effect until December 1, 1984, after the 1984 General Election. Current members of the House are therefore not affected by Section 4 since it will not take effect until after the next election of House members. Additionally, current members of the Senate do not receive in-

creases in salary from S.B. 270. Section 4 continues the present salary of Senators elected in 1982 for the remainder of their terms. The terms of those Senators not elected in 1982 expire in 1984. Section 4 of the Act clearly does not violate article 3, section 27. The remaining question is whether Section 5 of the Act, which gives a one-year $5,000 unvouchered expense allowance increase to all members of the General Assembly, violates article 3, section 27 of the Pennsylvania Constitution.

Our Supreme Court, in *Berks County Institution District v. Schoener,* 383 Pa. 210, 213, 117 A.2d 740, 741 (1955), stated:

> A lump sum allowance or appropriation in gross, for expenses is not per se illegal or contrary to the constitutional prohibition against an increase in *salary or emoluments;* and legislative judgment on the facts is generally conclusive. It has been said, however, that such allowance in gross for expenses 'must be within such reasonable limits as to warrant the conclusion that it might be covered by a certified statement of expenses incurred.' (Emphasis added; emphasis deleted.)

The Consumer Party contends that the increase is not reasonable. It also argues that legislative judgment must be discarded in this case due to the fact that the increase was in the self-interest of the individual members of the General Assembly. We disagree. Absent a clear violation of the Constitution, this Court will defer to the legislative judgment of the General Assembly. The Consumer Party has not shown the increase to be unreasonable. Indeed, all it has shown is that it is displeased with its elected representatives' enactment of this bill. Its remedy in a matter of this kind lies not in the Courts, but in

the electoral process itself. If the Consumer Party wishes to further its cause, it can do so at the polls. It has proved nothing which should be judicially remedied.

Accordingly, the motion for summary judgment of the Consumer Party is hereby denied.

The motion for summary judgment of R. Budd Dwyer, State Treasurer of the Commonwealth, and the Commonwealth of Pennsylvania is hereby granted.

The preliminary objections of the House of Representatives and the Senate of the Commonwealth of Pennsylvania, Henry Hager, President Pro Tempore of the Senate, and K. Leroy Irvis, Speaker of the House, are sustained.

## ORDER

It is hereby ordered that:

1. The motion for summary judgment of the Consumer Party is denied;

2. The motion for summary judgment of R. Budd Dwyer, State Treasurer of the Commonwealth, and the Commonwealth of Pennsylvania is granted; and

3. The preliminary objections of the House of Representatives and the Senate of the Commonwealth of Pennsylvania, Henry Hager, President Pro Tempore of the Senate, and K. Leroy Irvis, Speaker of the House, are sustained.

---

CONCURRING OPINION BY JUDGE DOYLE, April 19, 1984:

In their Petition for Review, the Consumer Party and other petitioners have pleaded a violation only of Article III, Section 27 by the specific provisions of the legislation which increased the legislators' expense allowance by $5,000.00. To the challenge of

respondents that Section 27 of Article III is not applicable to members of the General Assembly, the petitioners accede,[1] but argue in return that Article II, Section 8 is applicable and constitutionally would prohibit any such additional allowance.

The compensation of members of the Legislature is provided for in Article II of the Constitution, and while Article III, Section 27 is inapposite,[2] the same reasoning regarding salary and other expense allowances should pertain. Since I agree with the reasoning of the majority based on the precedent of cases dealing with "public officers" under Article III, I concur in the conclusion in this regard reached by the majority.

---

[1] Footnote 13 of petitioners' brief states, "Respondents argue that petitioners erroneously were relying on Section 27 of Article III. Petitioners hereby accept respondents' view of the controlling constitutional provision eliminating this issue from the case."

[2] See Snyder v. Barber, 378 Pa. 377, 106 A.2 410 (1954) (prohibition of Article III, Section 27 does not apply to members of the Legislature since their compensation is treated in Article II); Commonwealth v. Mathues, 210 Pa. 372, 59 A. 961 (1904) (prohibition does not apply to judiciary since its compensation is treated in Article V).

---

CONCURRING AND DISSENTING OPINION BY JUDGE BARRY, April 19, 1984:

Except for that portion of the majority opinion pertaining to Section 5 of the Act, which gives a one-year $5,000 unvouchered expense allowance increase to all members of the General Assembly, I agree with the opinion and join therein. Unfortunately, such an increase as contained in Section 5 violates Article II, Section 8 of the Pennsylvania Constitution, which provides:

The members of the General Assembly shall receive such salary and mileage for regular and special sessions as shall be fixed by law, and no

other compensation whatever, whether for service upon committee or otherwise. No member of either House shall during the term for which he may have been elected, receive any increase of salary or mileage, under any law passed during such term.

In *Loushay Appeal,* 169 Pa. Superior Ct. 543, 548-49, 83 A.2d 408, 411 (1951), the Court stated:

It is also to be observed that the constitutional provision forbidding an increase in the salary or emoluments of a public officer during the term of office is inexorable and may not be avoided by indirection. 43 Am. Jur., Public Officers, §353, P. 145. And as said in Murray v. Philadelphia, 364 Pa. 157, 165, 71 A.2d 280, the substance and practical operation of the statute controls, and not the terminology used.

Since the very real possibility exists that a portion of the $5,000 will not be used to cover actual expenses it must therefore be considered *income* to the recipient. I am left no choice but to dissent from that portion of the majority opinion which holds that Section 5 of the Act does not violate the Pennsylvania Constitution.