# In re Millcreek Township Zoning Ordinance

*Norman H. Stark* and *John J. Mehler,* for appellant Human Development of Erie Inc.

*Mark J. Murphy* and *Phyllis Chambers*, for individual appellants.

LEVIN, *J.*, July 25, 1989 — Presently before the court is an appeal from the decision of the Millcreek Township Zoning Hearing Board upholding the validity of Millcreek Township Ordinance no. 87-24.

Ordinance 87-24 is an amendment to Millcreek Ordinance no. 2, which this court reviewed previously. In that related case, district justice criminal convictions against appellants Human Development and Lakeshore were reversed. In the opinion, the court held that the residents of each group home constituted a family under Pennsylvania law and thus the homes were permissible in areas zoned for residential use.

Upon review of the ordinance amendment (87-24) the Millcreek Township Planning Commission recommended that it not be adopted. Nonetheless, the Millcreek Township Board of Supervisors enacted ordinance 87-24 on December 14, 1987. A hearing on the appellants' challenge to the validity of the ordinance was held on March 16, 1988, by

the Millcreek Township Zoning Hearing Board. The board entered its adjudication upholding the ordinance on July 27, 1988.

The zoning appeal filed by Human Development of Erie Inc. was consolidated with the appeal brought on behalf of 11 citizens of Millcreek Township, who are mentally retarded and reside in three community living arrangements. Lakeshore Community Services later intervened as a party appellant. Finally, the Township of Millcreek intervened as an interested party, joining in the argument of appellee the zoning hearing board of Millcreek Township.

In challenging the decision of the zoning hearing board, appellants argue that the ordinance is substantively invalid under an equal protection analysis, that it contravenes the public policy of this commonwealth and that it violates the federal Fair Housing Act.

This court took no additional evidence in the instant case. As such, the scope of review is to determine whether the Millcreek Township Zoning Hearing Board abused its discretion and/or committed an error of law in upholding the validity of the ordinance. *Konover & Associates v. Zoning Board of Adjustment, City of Philadelphia,* 89 Pa. Commw. 396, 492 A.2d 802 (1985).

This court adopts the findings of fact set forth in the board's adjudication with an important caveat. A number of the residual findings of fact improperly contain legal conclusions. This court is not bound by interpretations of law made by the zoning board and as such, does not accept the following findings in subsection P, "Residual Findings of Fact,": nos. 3 through 5, 9 through 12, 13, 16 through 22, 24 through 26.[1] However, the court does accept all

1. The primary difficulty the court has with the board's residual

other findings of fact made by the board. Those findings of fact have been made a part of the record and are incorporated herein by reference.

As defined, ordinance 87-24 excludes from residential districts group homes for dependent children, the mentally retarded, the physically handicapped and those over age 62. Group homes are permitted only in "B" Business Districts and may be located in "A" Business Districts by special exception. Restrictions on lot size, access, and distance between similar facilities are imposed under the special exception. In essence, appellants are challenging the validity of the ordinance because it excludes all group homes from single-family residential zones.

The court is well aware that the "rational basis" standard must be applied in examining the instant ordinance under an equal protection analysis. In *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the U.S. Supreme Court held that mental retardation is not a suspect/quasi-suspect classification in need of heightened judicial scrutiny. Nonetheless, on equal protection grounds, the court invalidated the Texas zoning ordinance as not being rationally related to a legitimate governmental purpose.[2] The ordinance in *Cleburne* required operators of group homes for the mentally retarded to obtain a "special-use permit" to operate in districts where other care facilities were freely permitted.

Admittedly, the *Cleburne* case is not on all fours

findings is that they label the group homes as "institutions" with no valid factual or legal basis to be found in the adjudication.

2. Interestingly, in the proceedings below, the Fifth Circuit found an equal protection violation in the city's *denial of a permit* while the U.S. Supreme Court found fault with the legislative mandate *requiring a permit in the first place.*

with the facts of the instant case. However, the court in *Cleburne* indicated a willingness to make a more detailed inquiry into governmental interests in certain minimum scrutiny cases than would normally be warranted. In fact, *Cleburne* has been heralded as introducing a "rationality with bite" test for certain classifications.

In order to prove an equal protection violation, a party must show that applying the statute to all persons within a given classification would not, on the whole, serve a legitimate state interest.

In the case at bar, the classification includes the mentally retarded, dependent children, the physically handicapped and those over age 62. The government purposes set forth in the record supposedly relate to the welfare and safety of putative group home residents and include the following: greater access to public transportation, restaurants, supermarkets, department stores, drug stores, employment opportunities, police/fire protection and other community facilities. However, there is no evidence in the record to indicate that persons with mental or physical disabilities need greater access to these facilities than persons of average abilities. In fact, the board expressly found that the appellants/ residents are able to shop, attend religious services, visit friends and take walks throughout Millcreek Township and beyond. To the contrary, the board failed to take into consideration the advantages of living in group homes in residential zones.

The instant ordinance does not affect other unrelated persons living in a small group in the same way that it affects the mentally retarded. For example, a group of five single, unrelated women would be permitted to live together as a single housekeeping unit in one home within a Millcreek Township residential zone. Yet the same number of mentally

retarded or physically disabled or aged persons are precluded from living in a residential neighborhood pursuant to ordinance 87-24. The only difference between these group homes would be the fact that members of the latter require some level of personal care and assistance. This is an invalid distinction and the adjudication compiled by the Millcreek Township Zoning Hearing Board is devoid of *any* legitimate governmental end to be attained by placing small group homes in areas zoned only for business.

*Our government, which obviously includes our judicial system, has an obligation to see that handicapped persons are treated equally with all others. Failure to do so in fact would constitute failure of the government itself.* This court finds it necessary to point out the simple fact that if the government has no interest in denying a benefit to a group of persons other than a societal fear or dislike of the group (as may indeed be the case here), the law will be invalid, even under the minimal scrutiny test.

It is necessary in this case to address the type of homes which are being excluded from residential zones by virtue of the ordinance. In order to validly exercise their authority, local zoning bodies should be less concerned with compositional characteristics or membership of group homes than with the manner in which they function. As will be discussed in greater detail below, the instant type of group home inherently functions as a single housekeeping unit, not as an institution. Consequently, access should be granted into residential zones.

Although composed of persons not legally related to one another, the homes have qualities of stability and structure similar to that of a family. The township cannot be permitted to avoid the legal definition of "family" by enacting an ordinance which

excludes group homes for the mentally disabled from residential areas by classifying them as "institutions" without justification.

The findings of the board strongly support the fact that the individual group homes are, to all outward appearances, stable family units. The board found, inter alia:

— There are no signs on the outside of the house indicating the nature of the activities conducted.

— There are no more than two cars parked at the house at anytime during the usual week's activity.

— No unusual activities take place at the house which would not be customary for other single-family residences in the neighborhood.

The board adjudication also goes into great detail describing the internal structure of the homes, again much akin to those activities of a natural family. Based on common sense, in addition to the board's findings of fact, the only logical conclusion is that the homes are not institutions.

Amidst a myriad of cases dealing with such group homes, no court has held them to be businesses or institutions. See *In re Appeal of Miller,* 511 Pa. 631, 515 A.2d 904 (1986). The board in this case incorrectly made a legal conclusion that the group homes are institutions. Innocuous as ordinance 87-24 may seem on its face, it cannot be upheld where its effect is to circumvent the definition of "family" as this court and a number of appellate court cases have found.

Group homes of this type do not conflict with the character of a residential neighborhood. In fact, the purpose of the group home is to be quite the opposite of an institution. It is designed specifically to be a home like other homes. The benefits the group home residents derive from living in a residential area are great.

Hence, zoning ordinance 87-24 violates the equal protection clause of the 14th Amendment because the township has no legitimate interest in prohibiting a group of five or fewer mentally retarded persons, aged persons, dependent children or physically handicapped persons from living together in a single, family-like setting in a residential neighborhood.[3]

In addition, the policy of this commonwealth favors deinstitutionalization of the mentally handicapped. It further supports local community treatment of the mentally handicapped as opposed to regional or institutional care. The Pennsylvania General Assembly has specifically enunciated this statewide policy in adopting Senate Resolution 42 as excerpted in part below:

"Whereas, it is public policy in Pennsylvania that people who are developmentally disabled, mentally retarded, mentally ill, physically disabled, elderly, and children shall enjoy the benefits of community residential surroundings; and

"Whereas, such citizens who are unable to live

---

3. In ruling on the many aspects of this case, this court is reminded of a statement made by the famous late New York jurist Justice Learned Hand:

"What is this liberty which must lie in the hearts of men and women? *It is not the ruthless and unbridled will; it is not freedom to do as one likes. That is the denial of liberty and leads straight to its overthrow.* A society in which men recognize no check upon their freedom soon becomes a society where freedom is the possession of only a savage few, as we have learned to our sorrow. What then is the spirit of liberty? I cannot define it; I can only tell you my own faith. The spirit of liberty is the spirit which is not too sure that it is right; the spirit of liberty is the spirit which seeks to understand the minds of other men and women; the spirit of liberty is the spirit which weighs their interest alongside its own, without bias; the spirit of liberty remembers that not even a sparrow falls unheeded." (emphasis supplied)

independently without special care and supervision generally achieve higher functioning levels when living in home-like settings in the community rather than large institutions; and

. . .

. "Whereas, small, community living arrangements have been recognized in Commonwealth Court and other court decisions as being the functional equivalent of biological families; and

"Whereas, *it is primarily the responsibility of municipalities through their zoning powers to permit the establishment of small, community residential facilities in all residential zones;* therefore, be it

"Resolved (the House of Representatives concurring), that the General Assembly reaffirm the policy that people who are developmentally disabled, mentally retarded, mentally ill, physically disabled, elderly, and children shall enjoy the benefits of community residential surroundings; and be it further

"Resolved, that *all municipalities throughout this commonwealth are urged to review their zoning ordinances to assure that they facilitate the achievement of this policy.*" S.R. 42, 1985 Legislative Journal — Senate 1346 (1985), 1986 Legislative Journal — House 94 (1986). (emphasis supplied)

This court takes judicial notice of Senate Resolution 42 in its entirety.[4]

4. Although a concurrent resolution is neither a bill nor a statute, it is nonetheless a formal expression of opinion of the Pennsylvania legislature, adopted by vote. *Scudder v. Smith,* 331 Pa. 165, 200 Atl. 601 (1938). It is quite ironic to note that Millcreek Township has opted, by way of its zoning powers, to ban from residential areas all small group homes that benefit the exact same classes of people to whom Senate Resolution 42 is directed, namely the developmentally disabled, mentally retarded, mentally ill, physically disabled, elderly and children.

Appellees argue that no Pennsylvania statute directly pre-empts local ordinances which bar the establishment of group homes in residential neighborhoods. However, as referred to above, our state policy does manifest an intent to disperse group homes throughout residential areas and therefore impliedly pre-empts local control in some instances. As such, the ordinance at issue, while not in direct conflict with any Pennsylvania statute, is nonetheless contrary to a clear policy of the commonwealth.

The court must also consider the applicability of the federal Fair Housing Amendments Act of 1988 to the instant case. The 1988 amendments to the Fair Housing Act (codified at 42 U.S.C. §§3601-3616) make denial of housing on the basis of an individual's handicap illegal. These new provisions address the serious shortage of non-institutional accessible housing available to those with disabilities. The amended act is set forth in relevant part below:

"§3604. *Discrimination in the sale or rental of housing and other prohibited practices* —

"As made applicable by section 3606 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful —

. . .

"(f)(1) To discriminate in the sale or rental, *or to otherwise make unavailable or deny,* a dwelling to any buyer or renter because of a handicap of —

"(a) that buyer or renter;

"(b) *a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available;* or

"(c) any person associated with that buyer or renter." 42 U.S.C. §3604. (emphasis supplied)

The FHAA broadly defines "handicap" as follows:
"§3602. *Definitions* —
"As used in this subchapter —

. . .

"(h) 'Handicap' means, with respect to a person —

"(1) a physical or mental impairment which substantially limits one or more of such person's major life activities,

"(2) a record of having such an impairment, or

"(3) being regarded as having such an impairment . . . " 42 U.S.C. §3602.

This expansive definition extends protection against housing discrimination to a wide range of persons, including those who have been affected by ordinance 87-24 in the case at bar.

The act does not apply solely to discrimination in the private sale or rental of housing. In fact, under federal case law, governmental entities in the housing situation are subject to a stricter standard for facially neutral zoning decisions which have discriminatory effects. See, e.g., *Resident Advisory Board v. Rizzo,* 564 F.2d 126 (3d Cir. 1977), cert. denied, 435 U.S. 908 (1978); *Arlington Heights II,* 558 F.2d 1283 (7th Cir. 1977); *United States v. City of Black Jack,* 508 F.2d 1179 (8th Cir. 1974), cert. denied, 422 U.S. 1042 (1975).

In construing a statute, the court is like an interpreter:

"The interpreter must uncover, from among the spectrum of linguistic possibilities, that meaning which will accomplish the purpose of the statute. 'The statute is an instrument for executing a legislative goal, and therefore it must be interpreted according to the purpose it embodies.' 'The judge,

when he comes to interpret the statute, should ask himself: what normative social goal does this statute seek to attain?' Indeed, it is an established rule of interpretation in most systems that a statute is to be interpreted in light of its legislative purpose and with a view to effecting its accomplishment." Barak, Aharon, *Judicial Discretion,* p. 61, Yale Univ. Press (1987). (footnotes omitted)

Thus, legislative history plays a significant role in determining the applicability of the FHAA to the Millcreek Ordinance sub judice.

The legislative history of the 1988 amendment undeniably indicates that local zoning ordinances are affected thereby:

"While state and local governments have authority to protect safety and health, and to regulate use of land, that authority has sometimes been used to restrict the ability of individuals with handicaps to live in communities. This has been accomplished by such means as the enactment or imposition of health, safety or land-use requirements on congregate living arrangements among non-related persons with disabilities. *Since these requirements are not imposed on families and groups of similar size of unrelated people, these requirements have the effect of discriminating against people with disabilities. The committee intends that the prohibition against discrimination against those with handicaps apply to zoning decisions and practices.* The act is intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special-use permits that have the effect of limiting the ability of such individuals to live in the residence of their

choice in the community."[5] *Report,* House Committee on the Judiciary, H.R. 1158, p. 24, June 17, 1988. (emphasis supplied)

The FHAA was signed September 13, 1988, and became effective March 12, 1989. It is the appellees' contention that the FHAA has no applicability to this case as the issue was not raised before the Millcreek Board at the time of hearing. The U.S. Supreme Court has generallly addressed the retroactivity issue stating that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary. *Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed. 2d 476 (1974). The court believes that the FHAA is properly before it at this time. Obviously, any governmental body is bound by federal legislation. Since the FHAA is now the law in effect, the ordinance must be reviewed in that context. By applying the FHAA, no manifest injustice would occur. In fact, by invalidating this amended ordinance, the underlying ordinance (ordinance no. 2) is in compliance with federal law, and duplicative litigation can be avoided. This saves the appellees both time and money and places no burden on them. Finally, there is no statutory/legislative history to the contrary. The court notes that the effect of ordinance 87-24 is a *continuing* violation of federal law. As such, there is no problem with retroactive application of the FHAA in this case.

Defendants also question the relevance of the Fair Housing Act here because appellants failed to initially exhaust their administrative right to relief.

---

5. The court takes judicial notice of the legislative history cited, *supra.*

This argument is misplaced. While a party may follow the complaint procedure with HUD prior to instituting a civil action under 42 U.S.C. §3610, exhaustion of remedies is not a prerequisite to bringing a civil action under 42 U.S.C. §3612.

This court *must* look to federal law for guidance. As set forth in this opinion, it has been found that ordinance 87-24 violates the appellants' right to equal protection of the law. This indicates both discriminatory intent and effect exist. Millcreek Zoning Ordinance 87-24 appears to be in violation of the FHAA as it denies the handicapped non-institutional housing in small group homes within areas zoned for residential use. By upholding the validity of the ordinance, the board has violated federal law.

In conclusion, this court is most mindful of the judicial restraint imposed on trial courts not to substitute their personal beliefs or opinions for the rules set forth in appellate decisions of our commonwealth. Also, the court fully realizes it cannot and must not become a super-zoning body. The court has in the past willingly respected this limitation and will continue to do so in the future. It has done so in previous decisions even though the court might not have agreed with the decision of the zoning board. Yet these constraints were never meant to prevent a court from acting where there has been discrimination against a claimant. In this case, as stated earlier, the court finds that the ordinance cannot be upheld based on equal protection, public policy and the federal Fair Housing Act.

## ORDER

And now, July 25, 1989, it is hereby ordered, adjudged and decreed that Millcreek Township Zon-

ing Ordinance no. 87-24 is invalid and unenforceable to the extent that it excludes small group homes for dependent children, the mentally retarded, the physically handicapped, and those over age 62 from residential zoning districts within the township. It is further ordered that the adjudication of the Millcreek Township Zoning Hearing Board is reversed. Appellants' request for attorney fees and costs is denied.