[J-50-2022] [MO: Todd, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

JASMINE WEEKS, ARNELL HOWARD, PATRICIA SHALLICK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

                Appellants

              v.

DEPARTMENT OF HUMAN SERVICES OF THE COMMONWEALTH OF PENNSYLVANIA,

                Appellee

:  No. 22 EAP 2021
:
:
:  Appeal from the order of the
:  Commonwealth Court dated May 13,
:  2021 at No. 409 MD 2019.
:
:  ARGUED:  September 14, 2022
:
:
:
:
:
:
:
:
:
:
:

**CONCURRING OPINION**

**JUSTICE MUNDY**                       **DECIDED:  September 28, 2023**

I join the majority opinion and write to observe that Article III, Section 1 is silent on the requirement for a bill's title.  Section 1 states in full:

> No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose.

PA. CONST. art. III, § 1.

The majority notes this Court has developed a two-part test for evaluating Section 1 challenges, per which the original and final purposes of a bill are compared to see if there has been any change, and the title and contents of the bill are reviewed to assess whether they are deceptive.  As can be seen, however, Section 1 makes no mention of either the title or the concept of deceptiveness.  Its only stipulation is that the bill's subject

cannot have been altered or amended during passage so as to change its original purpose. Thus, while non-deceptiveness may be a worthy goal, there is no textual support in Article III, Section 1 for such a mandate. *See McLinko v. Dep't of State*, 278 A.3d 539, 578-79 (Pa. 2022) (emphasizing that provisions of the Pennsylvania Constitution are interpreted according to their plain text). And it goes without saying that our loyalty is first and foremost to the text of the Constitution – which, in all events, can be amended if necessary to add a non-deception prerequisite. *See generally id*. at 608 (Mundy, J., dissenting) ("If the electorate wishes to effectuate that end, the state Charter, as the majority emphasizes, is not overly difficult to amend.").

One may reasonably question how the non-deception concept ended up in the judicial test for Section 1 compliance. My research reveals that the idea that a bill's title should not be deceptive was mentioned in *Scudder v. Smith*, 200 A. 601 (Pa. 1938), in a discussion on the differences among a bill, an act, and a joint resolution. *See id*. at 604. In that discussion, the Court indicated that various different "constitutional requirements" (plural) relating to the enactment of laws include the concept that the title should put legislators on notice so they may vote "with circumspection." *Id*. *Scudder* did not expressly tie the concept of non-deception to Section 1, although the discussion did, at another point, reference Section 1. *See id*. Perhaps for that reason, in *Consumer Party of Pennsylvania v. Commonwealth*, 507 A.2d 323 (Pa. 1986), this Court read *Scudder* as suggesting that Section 1 embodies an objective to put state legislators on notice of the contents of a bill to allow for informed and thoughtful voting. *See id*. at 334 (quoting *Scudder*, 200 A. at 604). This, however, reflected a misunderstanding of *Scudder* because, as explained, *Scudder* never suggested the non-deception mandate was contained in Section 1, nor did *Consumer Party* review the text of Section 1 when summarizing what *Scudder* said about that provision.

Although *Consumer Party* misread the discussion in *Scudder*, this Court in *Pennsylvanians Against Gambling Expansion Fund v. Commonwealth*, 877 A.2d 383 (Pa. 2005) ("PAGE"), nonetheless relied on *Consumer Party* in establishing the now-familiar two-part Section 1 inquiry which asks whether the legislation has been altered or amended to change the original purpose, and whether the bill's title and contents in their final form are deceptive. *See id*. at 408-09. That test has been used in subsequent cases. *See, e.g.*, *Stilp v. Commonwealth*, 905 A.2d 918, 957 (Pa. 2006); *Christ the King Manor v. DPW*, 911 A.2d 624, 637 (Pa. Cmwlth. 2006), *aff'd per curiam* 951 A.2d 255 (Pa. 2008). As with *Consumer Party*, the *PAGE* Court fashioned the non-deception prong without attempting to ground it in Section 1 itself. That prong, as discussed, lacks any warrant in the constitutional text, and this is consistent with its tenuous historical pedigree.

Furthermore, non-deception is, in essence, already required by Section 3, which states that the bill's subject must be clearly expressed in its title. *See* PA. CONST. art. III, § 3 (providing that "[n]o bill shall be passed containing more than one subject, which shall be clearly expressed in its title"); *see also City of Phila. v. Commonwealth*, 838 A.2d 566, 586 (Pa. 2003) (observing Section 3 contains a single-subject requirement and a separate clear-expression requirement). While the subject and purpose of a bill may overlap, they are distinct concepts. A bill's purpose is its intention or objective, *i.e.*, the "end in view," WEBSTER'S NEW WORLD COLLEGIATE DICTIONARY 1165 (4th ed. 1999), whereas the subject of a bill is the topic it deals with. *See id*. at 1426. And the judicial injection of the non-deceptive-title requirement into Section 1 has led to some confusion, as reflected for example in the Commonwealth Court's recent suggestion that Section 1 is satisfied so long as "the original and final versions [of a bill] fall under the same broad, general *subject area*." *Phantom Fireworks Showrooms v Wolf*, 198 A.3d 1205, 1223 (Pa. Cmwlth. 2018) (emphasis added).

Beyond alleviating confusion, disentangling the purpose and subject tests of Sections 1 and 3 may be salutary in that a distinct standard can then be developed for Section 1. This, in turn, could reinvigorate the safeguards intended by the electorate that adopted the provision. As it stands, the comparison of the original and final purposes of a bill pursuant to Section 1 is largely an exercise in evaluating whether the *subjects* of the original and final bill comply with the Section 3's single-subject requirement. This was illustrated in *PAGE*, where the Gaming Act began as a one-page bill relating to the duties of the Pennsylvania State Police to conduct background checks of individuals involved in harness racing, and then ballooned into a 145-page behemoth containing 86 sections and creating a whole new industry in Pennsylvania. After concluding the provisions of the final bill all related to the single subject of gaming regulation for Section 3 purposes, the Court compared the original purpose of the bill with its final purpose as follows:

> As introduced, HB 2330 provided the State Police with the power and duty to perform criminal background checks on, and identify through conducting fingerprinting, those applicants seeking a license from the State Horse Racing and State Harness Racing Commissions. Considering the original purpose in reasonably broad terms, we believe that here, *and in this instance akin to our finding above regarding a single unifying subject*, the original purpose of the bill was to regulate gaming. As finally passed, although significantly amended and expanded, we find that the primary objective of the legislation was to regulate gaming.

*Id*. at 409 (citation omitted, emphasis added). The Court thus concluded that "the bill was not altered or amended to change its original purpose." *Id*.; *see also Weeks v. DHS*, 222 A.3d 722, 731 (Pa. 2019) (rejecting an Article III, Section 1 challenge where the provisions added during the enactment process "all fit within the unifying topic mentioned in the above discussion pertaining to the single-subject rule").

This approach tends to conflate the purpose comparison as required by Section 1 with the subject evaluation mandated by Section 3. It therefore leaves something to be

desired as it is not clear such congruity or duplication was intended by the electorate that adopted those provisions. Moreover, a separate standard for Section 1, if developed by this Court with the aid of scholarly input during litigation, could strengthen our policing of the legislative process for conformance with Article III's original intent. To my mind, for example, a reasonable argument can be made that the bill at issue in *PAGE* underwent a change in purpose even though it dealt in both its original and final forms with the single subject of gaming regulation.

In terms of the matter *sub judice*, I join the majority's use of the established two-part test for a Section 1 challenge, as it is consistent with precedent and no party has suggested such precedent should be overruled. My only point here is that I would be receptive to an argument in a future case – assuming the issue is preserved and adequately briefed – that (a) the non-deceptive-title requirement should be dropped from the Article III, Section 1 analysis, and (b) a distinct standard should be developed and adopted by this Court to compare the original and final purposes of a bill.