Pennsylvania Railroad Company, Appellant, *v.* Schwartz.

Argued October 7, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD and JONES, JJ.

*John B. Prizer*, with him *William J. Taylor, Wallace D. Stewart, James H. Stewart, Jr., Spencer G. Hall* and *Nauman, Smith, Shissler & Hall*, for appellant.

*Edward Friedman*, Deputy Attorney General, with him *Thomas D. McBride*, Attorney General, *Howard Criden, Jack Aschinger, Thomas M. Kerrigan*, Chief Counsel, Public Utility Commission, for appellees.

OPINION BY MR. JUSTICE CHIDSEY, March 17, 1958:

On June 2, 1937, the Pennsylvania Railroad Company (present appellant) filed a bill in equity against the Public Utility Commission and the Attorney Gen-

eral in the Court of Common Pleas of Dauphin County alleging that Sections 2, 4, 5, 6, 7 and 8 of the Full Crew Act of June 1, 1937, P. L. 1120, 67 PS §461a et seq., were unconstitutional, and praying for an injunction to prevent their enforcement. The trial court, however, described the bills as one "attacking the constitutionality of the *act of assembly* . . . commonly known as the Full Crew Act," and discussed at length the facts and law governing the *general* question involved, namely, whether the legislation was arbitrary and unreasonable, had no tendency to promote the safety of employes or travelers upon railroads in any actual or substantial way, and was therefore not a proper exercise of the police power of the Commonwealth. The court concluded that "A permanent injunction must be granted against enforcement of the *Act,*" and entered a decree on April 26, 1939, enjoining defendants therein "from enforcing *the Full Crew Act* . . . or otherwise interfering with the plaintiff in the operation of its railroad in the Commonwealth of Pennsylvania because of failure to comply with *any* of the provisions of the said act." (Emphasis supplied).

On appeal to this Court, while we properly stated, in a per curiam opinion, that the court below had held unconstitutional only the sections of the Act referred to in the bill, we did, just as the court below had done, discuss the legislation as a whole. We approved the lower court's findings, and, on November 27, 1939, affirmed the decree. (336 Pa. 310)

Sixteen years thereafter, on June 13, 1955, the Attorney General filed in this Court a petition designated a "Bill of Review to Amend and Modify Final Decree". A rule on the Railroad Company to show cause was granted. The bill averred that the decree went beyond the allegations and prayer for relief of plaintiff's bill in equity in the 1937 proceedings in that it enjoined

enforcement of the entire Full Crew Act instead of merely the sections complained of as being unconstitutional. It prayed that the Court review, modify and amend the final decree of November 27, 1939, so as to limit its restraining effect to those portions of the Act specifically held to be unconstitutional. An answer was filed by the Railroad Company claiming that the decree was proper, but that, if believed to be wrong, application for a rehearing should have been made at the time, that the Attorney General had accepted the decree and entered into consent decrees in favor of every railroad in Pennsylvania in the exact terms of the final decree, and that the Legislature, during all the intervening years, had not re-enacted the sections now in controversy. The Court made an order on January 4, 1956 (383 Pa. 575), discharging the Attorney General's rule, "without prejudice to the right of the Attorney General to proceed through the Public Utility Commission for the enforcement of Sections 3, 9 and 10[1] of the Act of June 1, 1937, P. L. 1120, nor to the right of the plaintiff to plead in said proceedings any and all defenses which it may desire to present."

Following this order, the Public Utility Commission, on September 4, 1956, instituted an inquiry and investigation to determine whether or not the Railroad Company was violating Sections 3, 9 and 10 of the Full Crew Act, saying that our order of January 4, 1956, *required* it to do so. The Railroad Company filed a motion to dismiss the investigation, which motion was denied by the Commission. The Railroad Company thereupon brought the present complaint in the Court of Common Pleas of Dauphin County to enjoin further proceedings. Answer was filed by the Com-

---

[1] Section 10 relates merely to operation of a train in cases where a member of a crew is disabled between terminals.

mission. The Court, after hearing, dismissed the complaint; from its decree so ruling the present appeal was taken.

The court below misapprehended the import of our order. It stated in its opinion that "The Supreme Court of Pennsylvania has *directed* that certain particular sections of the Full Crew Law be enforced by the Attorney General, through the Public Utility Commission." (Emphasis supplied), from which it drew the inference that we had decided that those sections remained in full force and effect. Our order had no such intendment. It did not purport to decide any substantive question whatever but was concerned merely with a procedural issue, namely, whether there could be entertained a rule to amend a final decree of the Court entered some sixteen years before, in view of the fact that no rehearing had been requested at the time and that a bill of review had not been filed within any reasonable period.[2] We determined that a rule for that purpose could not be maintained, but that, if the Attorney General wished to obtain a ruling whether the sections in question were enforceable, the proper way for him to test the matter would be to institute proceedings through the Public Utility Commission, with the right, however, of the Railroad Company to plead any defense whatever, as, for example, that the decree of November 27, 1939, had properly pronounced the Full Crew Act unenforceable in its entirety and that therefore the proceedings must be discontinued. We did not intend to decide, declare or intimate, as presumed by the court below, that Sections 3, 9 and 10 of the Act survived that decree.

---

[2] ". . . they [bills of review] are subject to the equitable bar of laches . . . for equity, like law, favors the finality of judicial proceedings:" *Frantz v. Philadelphia et al.*, 333 Pa. 220, 222, 3 A. 2d 917.

The question, therefore, now presents itself for decision,—are those sections now enforceable by the Attorney General and the Public Utility Commission? Our answer is in the negative. It is true, as pointed out by appellees, that in the original action in 1937 the Railroad Company asked for an injunction against the enforcement of only certain sections of the Act (with such further relief as equity might afford), and it is also true that the court below and this Court expressly held unconstitutional only the sections thus specified, nor was the subject of severability directly considered or discussed. But we cannot, nevertheless, conclude that the action of the court below in granting, and of this Court in approving, a permanent injunction against any enforcement of the entire Act was an unintentional lapse or error. On the contrary, it was, in our opinion, wholly justified. The Act constituted a comprehensive, integrated scheme for the manning of trains with what the Legislature apparently thought were the necessary numbers of employes to insure the safety of employes and travelers; it made such provision for all sizes of both passenger and freight trains and under all conditions of operation. Section 3 provided for freight trains of less than 50 cars, Section 9 for certain self-propelled engines or machines as distinguished from locomotives. To have banned the enforcement, as the Court did, of Section 2, which prescribed the minimum crew for all passenger trains, and of Section 4, which similarly regulated the size of the crew for freight trains of 50 cars or more, and, at the same time, to have preserved in force Section 3, would have led to the absurd result that the railroads of Pennsylvania would be permitted to operate all their passenger trains, and all their large freight trains of 50 or more cars, with no minimum crew requirements at all, but would be subject to such requirements in

the case of freight trains of less than 50 cars. Likewise, if Section 9 were held to remain in force while Section 2 was invalidated, there would result the similar anomaly that minimum crews would be prescribed for the occasional employment of certain special self-propelled machines while the regular operation of locomotives would be relieved of any such requirements whatever. This certainly could not have been the intention of the Legislature, and although in the per curiam opinion of November 27, 1939, this Court stated that it was not necessary to consider the question of severability, we acted nevertheless on the assumption that the less important sections here in question could not be held, from any practical viewpoint, to remain in force, and therefore that the Act was unenforceable in its entirety. While the Act did contain the more or less usual severability clause, and while such a clause must be given due weight, it is not to be accepted judicially as conclusive if the unity of the general legislative scheme would be completely destroyed by a severance of its provisions: *Kelley et al. v. Kalodner et al.*, 320 Pa. 180, 188, 181 A. 598; *Kellerman v. Philadelphia*, 139 Pa. Superior Ct. 569, 578, 579, 13 A. 2d 84.[3]

Even if it were to be held, therefore, that the effect of the decree of November 27, 1939 must be limited to the invalidation of Sections 2, 4, 5, 6, 7 and 8 of the Act because the non-severability of the remaining sections was not there expressly considered, we are *now* required, in the *present* litigation, to interpret the Act to determine whether Sections 3, 9 and 10 *are* severable from the other sections which have been declared to be unconstitutional, and, for the reasons hereinbefore

---

[3] The provisions of the Statutory Construction Act of May 28, 1937, P. L. 1019, §55, are to the same effect: see *Willcox v. Penn Mutual Life Insurance Co.*, 357 Pa. 581, 593, 594, 55 A. 2d 521.

stated, we are clearly of opinion that they are not. Not only, therefore, because the decree of November 27, 1939, has remained unassailed for sixteen years, during which appellant and all other railroads in Pennsylvania have justifiably regarded it as a finality, but because, apart from and independently of the scope to be accorded to that decree, we are of opinion that the sections in controversy cannot be held to have survived the invalidation of the entire remainder of the regulatory provisions of the Act, it follows that the court below was in error in discharging appellant's complaint.

The decree is reversed, and the record is remanded with direction to enter an appropriate decree enjoining defendants therein from further proceeding in the Commission's inquiry and investigation. Each party to pay its own costs.

Mr. Justice COHEN took no part in the consideration or decision of this case.