535 A.2d 1200

Americus Centre, Inc. *v.* City of Allentown et al. Jeffry A. Epstein and William M. Berger, t/a 535 Hamilton Mall Associates, Appellants.

Argued September 14, 1987, before Judge CRAIG, and Senior Judges BARBIERI and KALISH, sitting as a panel of three.

*Maria C. Mullane*, with her, *Blake C. Marles, Weaver, Mosebach, Piosa, Hixson, Wallitsch & Marles*, for appellants, Epstein and Berger, t/a 535 Hamilton Mall Associates.

*James J. Greenfield*, with him, *Thomas A. Leonard, Dilworth, Paxson, Kalish & Kauffman*, for appellee, Americus Centre, Inc.

*Thomas C. Anewalt,* City Solicitor, for appellees, City of Allentown, Joseph Daddona and Donald Bernhard.

*David K. McCarthy, Black, Epstein, Prokup and McCarthy,* for appellees, Allentown Parking Authority, Robin Kleckner, Linda Rosenfeld, Howard D. Kunik, Watson Skinner, Charles Fletcher, Carl Stelmack and T. Anthony Iannelli.

OPINION BY SENIOR JUDGE BARBIERI, January 5, 1988:

William M. Berger and Jeffry A. Epstein, t/a 535 Hamilton Mall Associates (Berger-Epstein) appeal an order of the Lehigh County Court of Common Pleas preliminarily enjoining the Allentown Parking Authority (Authority) from executing a parking lease with it until final disposition of an equity action filed by Americus Centre, Inc. The complaint which Americus Centre, Inc. filed with the lower court seeks an order requiring the Authority to either sell or lease to it, the parking lot at Sixth and Court Streets in Allentown, Pennsylvania, or in the alternative to solicit competitive bids for the parking spaces available in the lot.

In 1985, Americus Centre, Inc., purchased for approximately $2,000,000.00, the Americus Hotel located in downtown Allentown, Pennsylvania, with the intention of renovating the building for use as a hotel complete with a restaurant and retail shops. At the hearing on the preliminary injunction, Americus Centre, Inc.'s president, Mark A. Mendelson, testified that in April of 1986, he met with the Authority's chairman and expressed his interest in purchasing the thirty-six space parking lot located at Sixth and Court Streets near the hotel renovation project. He further alleged that the chairman stated that he would recommend that the Authority sell the Sixth and Court Streets lot at 24-30

North Sixth Street to Americus Centre, Inc. in exchange for Mendelson's promise to purchase the property adjacent to the lot at 18-22 North Sixth Street and to locate the City's bus terminal in the hotel. Subsequently, on August 15, 1986, Americus Centre, Inc. purchased the property adjacent to the Sixth and Court Streets lot at 18-22 North Sixth Street for approximately $100,000.00 and received a permit from the City to operate a parking lot there.[1]

At the hearing on the preliminary injunction, the Authority's executive director testified that in March of 1986, Berger-Epstein expressed its interest in leasing parking spaces in the Sixth and Court Streets lot for use by prospective tenants of its office renovation project. In a letter dated April 17, 1986, the executive director wrote to William M. Berger informing him that there would be twenty-two spaces available in October of 1986, which the Authority would be willing to reserve for Berger-Epstein.[2]

In July of 1986, the Authority appointed a committee to consider the advisability of selling the lot at Sixth and Court Streets and on September 24, 1986, the committee recommended against such a course of action.

---

[1] Mendelson entered into a written agreement to purchase the property adjacent to the Sixth and Court Streets lot on June 26, 1986. The agreement was contingent upon the lot at Sixth and Court Streets being sold to Mendelson. At the time he purchased the property Mendelson waived the contingency, allegedly relying on a pledge by the City to sell or lease the parking lot to Americus Centre, Inc.

[2] See, Paragraph 58 of Exhibit "A" and Exhibit "1" to Exhibit "A" of Petition of Jeffry A. Epstein and William M. Berger, Trading As 535 Hamilton Mall Associates, To Intervene Pursuant to Pa. R.C.P. 2328.

At a duly advertised meeting on October 3, 1986, the Authority voted to lease Berger-Epstein twenty-two spaces in the Sixth and Court Streets lot. The term of the lease was determined at a special meeting of the Authority on October 8, 1986, and was to run from November 1, 1986, through October 31, 1989. At that meeting it was noted that Berger-Epstein's legal counsel was to prepare the written lease agreement. However, no lease agreement had yet been executed on December 22, 1986, when Americus Centre, Inc. obtained a temporary restraining order prohibiting the Authority from executing leases with Berger-Epstein or Musselman Advertising. In November or December of 1986, the Authority had agreed to lease four parking spaces at the Sixth and Court Streets lot to Musselman Advertising.[3]

After a hearing, the lower court entered an order dated January 2, 1987, preliminarily enjoining the Authority from executing lease agreements with Berger-Epstein or Musselman Advertising. By order of January 14, 1987, the lower court permitted Berger-Epstein to intervene in the action. This appeal followed.

On appeal Berger-Epstein contends that it was an indispensable party to the underlying action brought by Americus Centre, Inc. against the Authority to enforce competitive bidding and thus the lower court was without jurisdiction to enter the preliminary injunction. Berger-Epstein further contends that the lower court did not have reasonable grounds to issue the preliminary injunction. In support of its contention that it was an indispensable party to the underlying action, Berger-Epstein maintains it had a contractual right and a possessory interest in the parking lot and therefore a

---

[3] Musselman Advertising has not filed a motion to intervene in this matter.

final decree could not be rendered without impairing its interest.

There is no credible record evidence that Berger-Epstein had an actual contractual or possessory interest in the lot at the time the preliminary injunction was issued. Any interest Berger-Epstein had in the lot is based upon the April 17, 1986, letter from the Authority's executive director and the October 8, 1986, meeting where the Authority voted to enter into a three year written lease agreement with Berger-Epstein for twenty-two spaces. These actions do not give Berger-Epstein a possessory interest in the parking lot at Sixth and Court Streets. The April 17, 1986, letter contained no lease terms and the executive director admitted that she had no authority to make Authority policy.[4] The minutes of the Authority's meeting of October 8, 1986, indicated that a motion was made by one member of the Authority and seconded by another to lease twenty-two spaces in the Sixth and Court Streets lot to Berger-Epstein. It was recommended that Berger-Epstein's counsel prepare a written lease agreement for the twenty-two spaces for the period November 1, 1986 through October 31, 1989. No written lease agreement was executed prior to the issuance of the preliminary injunction.

In *Mechanicsburg Area School District v. Kline,* 494 Pa. 476, 481, 431 A.2d 953, 956 (1981), our Supreme Court announced the following considerations for determining whether a party is indispensable:

(1)  Do absent parties have a right or interest related to the claim?

(2)  If so, what is the nature of that right or interest?

---

[4] See Notes of Testimony of December 26, 1986, preliminary injunction hearing at 82.

(3) Is that right or interest essential to the merits of the issue?

(4) Can justice be afforded without violating the due process rights of absent parties?

In *Mechanicsburg*, the school district, alleging certain calculation errors in its personal income evaluation, brought an action to enjoin certain Commonwealth officials from paying the final installment of school subsidies for 1977-1978. The Court ruled that the other school districts were not indispensable parties since their rights were not essential to the merits of the issue of correct computation. Similarly, in the case at hand, the rights of Berger-Epstein are not essential to the merits of the issue of whether the Authority must engage in competitive bidding prior to leasing commercial parking space. To the contrary, Berger-Epstein has no possessory interest in the twenty-two spaces at the Sixth and Court Streets lot and stands in the same position as any other potential commercial lessee with regard to the issue of competitive bidding.

We next turn to Appellant's contention that the lower court had no reasonable grounds to issue the preliminary injunction. We have held that a preliminary injunction may only be granted where:

(1) The relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages;

(2) greater injury will occur from refusing the injunction than from granting it;

(3) the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct;

(4) the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and

(5) the plaintiff's right to relief is clear.

*T.W. Phillips Gas and Oil Co. v. People's Natural Gas Co.*, 89 Pa. Commonwealth Ct. 377, 383, 492 A.2d 776, 780 (1985).

On appeal from a grant of a preliminary injunction, we will not inquire into the merits of the controversy. *Willman v. Children's Hospital of Pittsburgh*, 505 Pa. 263, 479 A.2d 452 (1984). Instead, our review of the lower court's order is limited to a determination of whether the record contains reasonable grounds to support the preliminary injunction. *Fischer v. Department of Public Welfare*, 497 Pa. 267, 439 A.2d 1172 (1982).

Berger-Epstein contends that the lower court erred in granting the preliminary injunction in that: Americus Centre, Inc. did not show (1) that it would suffer immediate and irreparable harm that could not be compensated by damages; (2) that the injunction would preserve the status quo; or (3) a clear right to relief.

In support of its argument that Americus Centre, Inc. would not suffer immediate and irreparable harm, Berger-Epstein lists other parking facilities in the vicinity of the Americus hotel which were available to Americus Centre, Inc. at the time of the preliminary injunction hearing. A careful review of the record reveals that the trial court could reasonably find that these alternatives were not feasible. For instance, Appellant presented evidence that there were sixty spaces available at Colonial Parking, Inc.'s surface lot. However, the record demonstrates that this lot was located further from the hotel than the Sixth and Court Streets lot and was inconvenient for valet parking. The owner of the Park and Shop lots testified that he could not provide Americus Centre, Inc. with a long term lease and parking was subject to availability. The Authority's parking deck at Sixth and Linden Streets does not provide the same ease of access from the hotel as the lot at Sixth and Court Streets. None of the alternatives would be as convenient as the Sixth and Court Streets lot located

next to the property at 18-22 North Sixth Street which Mendelson purchased to convert into a parking lot. We conclude that the lower court had reasonable grounds to find that Americus Centre, Inc. would suffer immediate and irreparable harm which could not be compensated by damages should the injunction not issue.

Appellant also maintains that the injunction did not preserve the status quo because it deprived it of contractual rights and possessory interests in the lot at Sixth and Court Streets. However, as we have already determined, Appellants had no contractual right or possessory interest in the lot. If the injunction had not issued, the Authority and Berger-Epstein would have executed a three year written lease for the Sixth and Court Streets lot. Therefore the injunction preserved the status quo.

Berger-Epstein also maintains that the lower court erred in granting the injunction because Americus Centre, Inc.'s right to relief is not clear. In support of this contention, Berger-Epstein points out that the lower court noted in its order granting the preliminary injunction that it was not entirely convinced that *Price v. Philadelphia Parking Authority*, 422 Pa. 317, 221 A.2d 138 (1966) stands for the proposition that the Authority must engage in competitive bidding for commercial parking leases. In the underlying action, Americus Centre, Inc. contends that the Authority violated the Parking Authority Law by allotting space to Berger-Epstein without first engaging in competitive bidding.

Section 5(a) of the Parking Authorities Law,[5] states in pertinent part:

> The Authority shall be for the purpose of . . . leasing, either in the capacity of lessor or lessee, land and facilities to be devoted to the parking of

---

[5] Act of June 5, 1947, P.L. 458, *as amended*, (Act) 53 P.S. §345(a).

vehicles of any kind: Provided, however, That the Authority shall not have the power to engage in the sale of gasoline, the sale of automobile accessories, automobile repair and service, or any other garage service and shall not engage in the sale of any commodity of trade or commerce.

The Authority shall have the power to lease portions of the street level or other floors of the parking facilities *for commercial use and for any use in addition to parking,* including emergency automobile repair service, and the sale, by the lessee, of any commodity of trade or commerce or any service, and, except the sale of gasoline or the sale of automobile accessories, where, in the opinion of the Authority, such leasing is desirable and feasible in order to assist in defraying the expenses of the Authority. *Such leases shall be granted on a fair competitive basis on such negotiated or competitive basis as the Authority may deem best suited to accomplish the above purpose.* (Emphasis added.)

In *Price,* the Supreme Court held that the Philadelphia Parking Authority's lease of air rights was a lease of non-parking commercial space which was subject to the requirement of competitive bidding. Berger-Epstein maintains that *Price* stands for the proposition that a parking authority must engage in competitive bidding before leasing air rights but is not required to do so in order to lease a proposed garage facility. It further maintains that Section 5(a) of the Act differentiates between the leasing of commercial parking spaces and other commercial uses for purposes of competitive bidding. On the other hand, Americus Centre, Inc. argues that Section 5(a) does not distinguish between commercial parking uses and other commercial uses with regard to competitive bidding and that under *Price,* if an

authority turns over a portion of a parking facility to a commercial entity, the lease must be awarded on a competitive basis. This latter interpretation recognizes the fact that a parking lease to a commercial entity will restrict public access to parking and could result in favoritism and fraud in the awarding of such leases. These same concerns were noted by the Court in *Price* with regard to non-parking commercial leases.

We note that subsequent to *Price*, the Legislature, in 1968, amended Section 5 of the Act. The amendment permitted the Authority[6] to lease portions of its parking facilities for commercial use and "any use in addition to parking", with the exception of the sale of gasoline or automobile accessories. It is unclear as to whether or not commercial use now includes commercial parking. The Act was amended in 1969 to provide that the "leases shall be granted on a fair competitive basis *on such negotiated or competitive basis* as the Authority may deem best. . . ." (emphasis added). The Court in *Price*, interpreted the language "fair competitive basis" to require competitive bidding. The addition of the "negotiated or competitive basis" language would seem to contradict the requirement that leases be entered into on a fair competitive basis. There is therefore a substantial question as to whether the Authority may enter into a long term commercial parking lease for a major portion of one of its facilities without first engaging in competitive bidding.

We have held that a clear right to relief does not require the party seeking a preliminary injunction to demonstrate an absolute right to relief. *T.W. Phillips*. If

---

[6] The 1968 Amendment only provided that the Authorities in cities of the second class could lease portions of the street level or other floors of parking facilities for any use in addition to parking, with the exception of the sale of gasoline or automobile accessories. Subsequently, this privilege was extended to all Authorities.

the other requirements for a preliminary injunction are met and the underlying cause of action raises important legal questions, the right to relief is clear. *Id*. "Therefore, the 'clear right to relief' element does not require the chancellor to determine the merits of the controversy at the preliminary injunction stage; rather, the chancellor need only determine, in addition to the other criteria, that the claim raises substantial legal questions." *Id*. at 385, 492 A.2d at 781.

The question of the need for competitive bidding raised on the underlying claim is clearly substantial. As the other criteria of a preliminary injunction have been met,[7] we hold that Americus Centre, Inc. had demonstrated a clear right to relief.

We conclude that the lower court had reasonable grounds to justify the grant of the preliminary injunction to Americus Centre, Inc. Accordingly, we will affirm its order.

## ORDER

AND NOW, this 5th day of January, 1988, the order of the Lehigh County Court of Common Pleas at No. 86-E-119, dated January 2, 1987, is affirmed.

---

[7] Berger-Epstein makes a bare allegation that Americus Centre, Inc. failed to show that greater injury would occur from refusing the injunction than from granting it. The record reflects that the Authority is leasing the twenty-two spaces at the Sixth and Court Streets lot to Berger-Epstein on a month to month basis. Therefore, Berger-Epstein has not suffered any substantial injury from not being able to execute a long-term lease prior to disposition of the underlying action. Furthermore, as discussed above, Americus Centre, Inc. would have suffered immediate and irreparable harm if the injunction had not issued.