570 A.2d 1354

**WEST SHORE SCHOOL DISTRICT, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD and Those Persons Purporting to act on Behalf of Such an Entity and West Shore Education Association, Respondents.**

Commonwealth Court of Pennsylvania.

Heard Jan. 23, 1990.

Decided Feb. 1, 1990.

Thomas A. Beckley, John G. Milakovic, Charles O. Beckley, II, Nora F. Blair and Michael D. Schultz, Beckley & Madden, Harrisburg, for petitioner.

Janice L. Anderson, Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief of Litigation Section, and Ernest D. Preate, Jr., Atty. Gen., for respondent, Pennsylvania Labor Relations Bd.

Thomas W. Scott, Killian & Gephart, Harrisburg, for respondent, West Shore Educ. Ass'n.

PELLEGRINI, Judge.

West Shore School District (District) has filed a petition for review in the nature of an action in equity with a request for a declaratory relief against the Pennsylvania Labor Relations Board (PLRB) and the West Shore Education Association (Association), seeking to enjoin the issuance of any adjudications or conduct of any hearing on two unfair labor practices filed by the Association against the District. The District is now seeking a preliminary injunction because it claims that the PLRB no longer exists and that the PLRB has not been constitutionally re-established.

The Pennsylvania Sunset Act, Act of December 22, 1981, P.L. 508, *as amended,* 71 P.S. §§ 1795.1–1795.14 was enacted as part of a national legislative trend requiring periodic legislative review of the conduct, need, revision or even elimination of various administrative agencies. By 1986, thirty-five states had enacted similar legislation. *Cloonan v. Thornburgh,* 103 Pa.Commonwealth Ct. 1, 519 A.2d 1040 (1986). Consistent with the spirit behind its own passage, the Sunset Act expires on December 21, 1991, ten years after its effective date. Section 14 of the Sunset Act, 71 P.S. § 1795.14.

To trigger a review of these agencies, the General Assembly enacted a legislative scheme that set an initial review schedule and subsequent reviews every ten years. In either situation, unless an agency's existence was extended for another year by actions of the Leadership Committee, and then, within that year, either re-enacted by the General Assembly through legislation or through "Sunset Resolutions" passed by the House and the Senate reauthorizing

the agency, the agency would automatically terminate. In accordance with the schedule of review set forth in the Sunset Act, the General Assembly has reevaluated every state administrative agency. It has re-enacted 58 and abolished seven agencies by legislation, terminated four through legislative inaction[1], and reauthorized five, including the PLRB, through the "Sunset Resolution" process as provided for in subsection 7(b) of the Sunset Act.[2] 71 P.S. § 1795.7(b). No further review of any administrative agency will take place under the provisions of the Sunset Act unless the Act is re-enacted.

In the instant case, the PLRB was due to expire on December 31, 1983. Section 6 of the Sunset Act, 71 P.S. § 1795.6. As authorized by Section 4 of the Sunset Act, 71 P.S. § 1795.4, the Leadership Committee, on January 25, 1984, extended the life of the PLRB for one year, or until December 31, 1984. On November 28, 1984, within the year and pursuant to Section 7 of the Act, 71 P.S. § 1795.7, the House and the Senate passed separate but identical resolutions titled Sunset Resolution 17. On December 30, 1984, Governor Thornburgh signed the Senate's Sunset Resolution 17. (Joint Exhibit 8). The House's Sunset Resolution 17 apparently was not presented to him for signature.

Recently, in *Honorable Lucien Blackwell v. State Ethics Commission*, 523 Pa. 347, 567 A.2d 630 (1989) (*Blackwell II*), the Supreme Court declared that Section 4(4) of the Sunset Act, which allowed the Sunset Leadership Committee to postpone the termination of an agency for up to one year, was unconstitutional because it sought to rest legislative power in the Leadership Committee contrary to the Pennsylvania Constitution, Art. II, § 1. This court, in

1. Four agencies terminated by legislative inaction are the Pennsylvania Parkway Commission, State Art Commission, Savings Association Board and the State Board of Public Welfare.

2. In addition to the PLRB, the Pennsylvania Securities Commission, the State Workmen's Insurance Board, the Citizens Advisory Council (DER), and the Environmental Quality Board were all continued by sunset resolutions. The State Board of Private Trade Schools was continued by resolution but later abolished by the Act of December 15, 1986, P.L. 1585.

*Blackwell v. State Ethics Commission,* 130 Pa.Commonwealth Ct. 646, 569 A.2d 378 (1990), held that the Supreme Court's decision would only be applied prospectively.

In *Americus Centre v. City of Allentown,* 112 Pa.Commonwealth Ct. 308, 535 A.2d 1200 (1988), we recently reiterated our holding in *T.W. Phillips Gas and Oil Co. v. Peoples Natural Gas Co.,* 89 Pa.Commonwealth Ct. 377, 492 A.2d 776 (1985), that a preliminary injunction may only be granted where:

    1.  the relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages;

    2.  greater injury will occur from refusing the injunction than from granting it;

    3.  the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct;

    4.  the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and

    5.  the plaintiff's right to relief is clear.

*Americus Centre,* 112 Pa.Commonwealth Ct. at 314, 535 A.2d at 1203.

■ In *Americus Centre,* we noted that in order to demonstrate a clear right to relief, the party seeking a preliminary injunction need not demonstrate an absolute right to relief. If the party has met the other requirements for a preliminary injunction and the underlying cause of action raises important legal questions, the right to relief is clear. *Americus Centre,* 112 Pa.Commonwealth Ct. at 318–19, 535 A.2d at 1205.

■ For the District to establish that its right to relief is clear, it must establish that the action taken by the House and the Senate in passing their respective resolutions was either unconstitutional or in excess of their legislative power.

The District contends that its right to relief is clear, because it asserts that *Blackwell* declares unconstitutional the Sunset Leadership Committee extensions of the PLRB's

existence. Consequently, the District argues that the PLRB went out of existence by operation of the Sunset Act on December 31, 1983. Because the PLRB was no longer in existence, the District submits that the House and Senate were without power to pass the Sunset Resolution continuing the PLRB's existence for ten more years.

The PLRB, through the Attorney General and the Association, both contend that the sunset resolutions, passed by the General Assembly, have the same force and effect as an "Act" and, therefore, the *Blackwell* created hiatus in existence makes no difference. The Association, however, further asserts if the Sunset Resolution is declared to be unconstitutional, then the entire Sunset Act should be declared unconstitutional. The Association advances the proposition that, since the Leadership Committee extensions are already unconstitutional, and should this Court likewise find the resolution method of reauthorizing an agency unconstitutional, the remaining provisions of the Sunset Act would no longer represent the intent of the legislature. Therefore, the Act must be held unconstitutional.

In ascertaining whether there is any merit to the District's claim that the Sunset Resolution is invalid or unconstitutional, the legal effect of "Sunset Resolutions" must first be examined. "Sunset Resolutions" are authorized by Section 7(b) of the Act, 71 P.S. § 1795.7(b), which provides:

> *Unless legislation is enacted* prior to November 1, reestablishing an agency as provided in subsection (a), the presiding officer of each House shall cause to be placed on their respective calendars for the first legislative day in November, the question, in the form of a resolution, of whether an agency scheduled for termination on December 31 of that year shall be continued. If a majority of the members elected to each House approve such a resolution prior to the scheduled termination date of December 31, the agency shall be continued until the next review and termination cycle scheduled for said agency. (Emphasis added.)

In carrying out its business, the General Assembly uses resolutions for a variety of purposes. *See generally* 101 Pa.Code Pt. 1, Ch. 9. Single house resolutions are introduced into either house, do not contemplate concurrence, and are used to carry out the respective house's business. 101 Pa.Code § 9.42. The General Assembly uses joint resolutions for the sole purpose of proposing constitutional amendments. 101 Pa.Code § 9.41. A concurrent resolution is a written resolution introduced into either house and requires or contemplates the concensus by the other house. 101 Pa.Code § 9.43. They are commonly used for recalling or returning bills to the Governor, adjournments or other internal operation matters of the General Assembly. A Sunset Resolution is a separate type of resolution created by the Sunset Act to provide a method to continue agencies for a period of ten years. Identical resolutions are introduced in the House and Senate, and if they are not passed within an allotted time period, the affected agency expires. 101 Pa.Code §§ 9.221–9.225.

In *McGinley v. Scott,* 401 Pa. 310, 164 A.2d 424 (1960), our Supreme Court set forth the differentiation that exists between laws and resolutions. The Supreme Court stated (401 Pa. at 320–321, 164 A.2d at 430):

[t]he differences between laws and resolutions are fundamental ... In *Scudder v. Smith,* 331 Pa. 165, 170, 200 A. 601, 604, this court, in pointing out the differences between a law and a resclution, said: "Section 1 of Article III of the Constitution provides: 'No law shall be passed except by Bill, and no Bill shall be so altered, or amended, on its passage through either House, as to change its original purpose.' In the *Southwark Bank v. The Commonwealth,* 26 Pa. 446, 450, this court said: 'A bill is the draft or form of an act presented to the legislature, but not enacted. An "act" is the appropriate term for it after it has been acted on by, and passed, the legislature. It is then something more than a draft or form. It has a legal existence as "an act" of the legislative body, because it becomes a law, without further action from any other

branch of the government, if the executive take no measures to prevent it.' A 'Bill' has been defined to be 'a form or draft of a law presented to a legislature for enactment.' Webster's New International Dictionary. A 'Joint Resolution' has been defined by the same authority to be 'A resolution adopted jointly by the two branches of a legislative body.' A 'resolution' by the same authority has been defined as 'A formal expression of the opinion or will of an official body or a public assembly, adopted by vote; as a legislative resolution.' When the Constitution provided that 'no law shall be passed except by bill,' it meant by 'a form or draft of a law submitted to the legislature for enactment'; it did not recognize a mere 'formal expression of opinion' as adequate to the creation of a law."

Because a resolution does not have the force and effect of law, our Supreme Court has consistently held that the General Assembly cannot use this legislative device as a substitution for a law. In *Scudder,* the Supreme Court disallowed the use of a joint resolution to create a commission, to confer upon it subpoena powers, and to afford it an appropriation of state funds. The Pennsylvania Constitution specifically proscribes the appropriation of state funds except by law. In *McGinley,* the Court, while reaffirming the differentiation between laws and resolutions initially enunciated in *Scudder,* held that if the action taken there by resolution of the Senate alone, creating a Senate Committee to investigate alleged election frauds in Philadelphia and the conduct of the Philadelphia County District Attorney respecting such putative offenses, had been within the legislature's jurisdiction, it would not have been unconstitutional.

More recently, in *Commonwealth v. Sessoms,* 516 Pa. 365, 532 A.2d 775 (1987), our Supreme Court declared there that the Pennsylvania Commission on Sentencing, which had been created by law, and was authorized to promulgate guidelines to be *considered* by courts when imposing sentence and to propose changes in the sentencing statutes to

the legislature, was a constitutional exercise of legislative authority. The constitutionality of the Commission was upheld because it was created as a legislative agency and not as an administrative agency within the executive branch of our government, and because it's work product, namely sentencing guidelines, was solely advisory in nature and accordingly did not infringe upon the independence of the judicial branch of our state government.

In *Sessoms*, the Supreme Court found, furthermore, that the procedure under the Act, which provided for legislative veto of the guidelines was constitutional unless a concurrent resolution rejecting a guideline failed to satisfy the presentment requirement as contemplated in Art. III § 9 and Art. IV § 15. What is more, the *Sessoms* court clearly stated that the Commission's guidelines could not, without more, be given the effect of law, either as legislation or regulation. Such substantive legal effect could only result by way of an enactment of a law or by administration of a law duly enacted. *Sessoms*, 516 Pa. at 376, 532 A.2d at 781.

Following its own procedures, the General Assembly, in enacting subsection 7(b) of the Sunset Act, clearly realized Sunset Resolutions are not legislative in nature. The General Assembly clearly stated in that subsection that the Sunset Resolution process was only to be used "unless legislation [was] not enacted."

In *Blackwell II*, the Supreme Court held that "it is hard to imagine a *more basic* policy question than whether a particular agency will exist", and to carry out that function, it must be exercised through the General Assembly through legislation. Slip Opinion at J–160–1989–15. For legislation to be enacted in a constitutional manner, it must, *inter alia*, be passed by bill, Art. III, § 1, be considered on three different days in each House, Art. III, § 4, and be printed with all amendments before final vote, Art. III, § 4. None of these constitutionally mandated procedures was followed in the Sunset Resolution process. Since the process set forth in subsection 7(b) is not legislation but something else, then under the Supreme Court's mandate in *Blackwell II*,

the Sunset Resolution process set forth in subsection 7(b) of the Sunset Act is unconstitutional. This process is unconstitutional because it purports to continue an agency through something other than legislation, which is contrary to Article III of the Pennsylvania Constitution.[3]

Now that it has been established that subsection 7(b) of the Sunset Act is unconstitutional, the District's right to relief is clear. Ordinarily, the District would only need to establish irreparable harm for a preliminary injunction to issue. The effect of declaring subsection 7(b) alone unconstitutional would terminate the existence of the PLRB. The very attempt by the PLRB to exercise unauthorized jurisdiction establishes the requisite irreparable harm which the District must establish for the issuance of a preliminary injunction. However, prior to reaching that result, the Association contends that the entire Sunset Act can no longer represent the will of the legislature if both the Sunset Leadership Committee and the Sunset Resolution process are unconstitutional. The Association asserts that both these provisions cannot be severed from the Sunset Act's remaining provisions without making the entire Act unconstitutional.

Section 1925 of the Statutory Construction Act, 1 Pa.C.S. § 1925, provides:

The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that

3. In *Cloonan,* this Court, in a single-judge opinion, declared that subsection 7(b) was constitutional based on contentions that it violated Article III, Section 4 (establishing procedures for consideration of bills and adoption of bills by both Houses of the General Assembly) and Article IV, Section 15 (requiring presentment), and that it expanded limitations upon the powers of the President of the Senate provided by Article IV, Section 4. The issue of the necessity to enact legislation to continue an agency was not then before this Court.

it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

■ While a severability clause must be given due weight, it is not judicially conclusive if the legislative intent is destroyed by severance of its provisions. *Pennsylvania R. Co. v. Schwartz,* 391 Pa. 619, 625, 139 A.2d 525, 528 (1958). Moreover, even though a statute may be partially valid and partially invalid, that can only occur where the provisions are distinct and not so interwoven as to be inseparable. *Heller v. Frankston,* 504 Pa. 528, 538, 475 A.2d 1291, 1297 (1984).

The intent behind passage of the Sunset Act was not to provide for the automatic termination of any administrative agency, but rather to provide a detailed statutory mechanism for the legislative review of the conduct, necessity and continuation of existing agencies, boards and commissions of this Commonwealth. *Blackwell II* has caused sufficient damage to the statutory scheme that its effect alone may have thwarted the legislative intent behind this Act. It caused agencies to automatically terminate without the ability of the legislature to easily extend their lives.[4]

If *Blackwell II* alone did not negate the legislative intent, then together with the unconstitutionality of subsection 7(b), that result certainly has been achieved. No longer does the Act legislatively prescribe a rational method for the extension and continuation of an agency subject to review prior to its termination. As counsel for the Association stated, the unconstitutionality of these provisions knocks "two legs out of a three-legged stool." The legislative intent is no longer expressed by the remaining provi-

---

4. The Association correctly points out that the General Assembly would not enact a scheme that automatically terminates 25 agencies a session prior to receiving reports and audits and conducting hearings and investigations without the authority granted to the Leadership Committee to reschedule and postpone as "necessary."

sions of the Sunset Act and, accordingly, the entire Act must be declared unconstitutional.

This holding in practice has a *de minimus* effect on the legislative purpose behind the Sunset Act. All agencies to be reviewed under its provisions have been reviewed and reauthorized by legislation, save those authorized by Sunset Resolutions and three terminated by inaction of the Leadership Committee. No other agencies are scheduled to be reviewed, and the Sunset Act itself expires within two years. The PLRB and other agencies' existence continues because of the invalidity of the Act and there is no "Blackwell hiatus" during the period in which the PLRB and these other agencies were unconstitutionally extended. The four agencies purportedly terminated by legislative inaction would be reconstituted, but could easily be abolished by legislative action.

Unfortunately for the District, who came well-prepared with a sound position, it "won the battle but lost the war." Since the right to relief is no longer clear, the Preliminary Injunction must be denied. The issues raised by the District, however, are so important that any pleadings that require the ruling of the full court deserve to be heard expeditiously. An appropriate order will be entered.

## ORDER

AND NOW, this 1st day of February, 1990, it is ordered, adjudged and decreed that: (1) Petitioner's motion for preliminary injunction is denied; (2) any matter that requires argument before the Court will be scheduled on the next available argument list.